AUSTIN LAKES JOINT VENTURE,
Appellant (Plaintiff Below),

v.

AVON UTILITIES, INC., and Donald L.
Groninger, Appellees (Defendants
Below).

No. 32S01–9503–CV–358.

Supreme Court of Indiana.

March 17, 1995.

David E. Wright, Ronald G. Sentman, Johnson, Smith, Densborn, Wright & Heath, Indianapolis, for appellant.

David W. Craig, Scott A. Faultless, Wright & Craig, Indianapolis, for appellees.

## ON PETITION TO TRANSFER

SULLIVAN, Justice.

To what extent do the administrative law doctrines of "exhaustion of remedies" and "primary jurisdiction" affect a trial court's subject matter jurisdiction over complaints involving issues arguably within the jurisdiction of administrative or regulatory agencies? We resolve this question in accordance with the analysis of Judge Robertson of the Court of Appeals, both in this case, *Austin Lakes Joint Venture v. Avon Utils., Inc.* (1993), Ind.App., 622 N.E.2d 970, and another recent case, *South Eastern Indiana Natural Gas Co. v. Ingram* (1993), Ind.App., 617 N.E.2d 943, *trans. denied.* However, we find no issues in this case for resolution by administrative or regulatory agencies.

### Facts

The case comes before us on appeal from the trial court's grant of Avon Utilities' motion to dismiss for lack of subject matter jurisdiction under Indiana Trial Rule 12(b)(1). In this procedural context, we assume the following facts alleged by Austin Lakes Joint Venture to be true.

Austin Lakes is the developer of Austin Lakes Estate Subdivision in Hendricks County. The subdivision consists of 101 acres divided into 238 lots. Avon Utilities operates a sewage service facility and sewage treatment plant. Avon would be the utility to provide the subdivision with sewer service.

Developer Austin Lakes received assurances from utility Avon's President, Donald Groninger, that utility would be able to service the entire 101 acres of the subdivision via existing lines and that utility was then operating at only half-capacity. Groninger confirmed the preliminary assurances after Austin Lakes had closed on the purchase of the first section of the 101 acres. He went further to say that utility was in good standing and was in compliance with applicable agency regulations. On the strength of Groninger's statements about utility, developer arranged construction financing and permits required to continue the development.

On August 11, 1989, the Indiana Department of Environmental Management (IDEM) told developer that it had denied developer a construction permit because of serious waste treatment noncompliance by utility. At the same time, developer learned that IDEM had cited, criticized, and fined utility. IDEM had refused developer's hook-up approvals because utility had discharged raw sewage into White Lick Creek and because utility had agreed to provide new developments with sewage treatment beyond its capacity.

Avon Utilities answered IDEM's action by entering into an agreement with the agency to make capital improvements to its plant. The authority for this "agreement" was apparently Indiana Code § 13–7–11–2 (1993).

After developer had learned of utility's situation with respect to IDEM, utility assured developer that it could come into compliance within two weeks by submitting a plan and working with the state. On the strength of this assurance, developer obtained lines of credit to continue its development plans for the subdivision.

At some time shortly thereafter, utility told developer that it had made commitments that would bring it into compliance with state regulations, but it had not done so. Progress with the development halted when IDEM denied approval of the hookups.

Developer did eventually gain approval for the first section of the subdivision—that is, for forty-one hookups. Developer did not, however, appeal the denial of its first application for a construction permit.

Instead of appealing IDEM's denial of approval, developer sued Avon Utilities and Donald Groninger for breach of contract, fraud, promissory estoppel and specific performance of the alleged contract. Utility answered with a motion to dismiss for lack of subject matter jurisdiction under Trial Rule 12(B)(1) because developer had not exhausted its administrative remedies with IDEM and the Indiana Utility Regulatory Commission (IURC), the state regulatory agencies, utility argued, with jurisdiction over the issues developer was presenting in court. Apparently on grounds that IDEM and IURC had exclusive jurisdiction over the issues presented, the trial court dismissed developer's suit against utility for lack of subject matter jurisdiction. Developer appealed.

The Court of Appeals reversed the trial court's dismissal, holding that while certain issues in the case needed to be resolved by IURC (but not IDEM), the trial court nevertheless had subject matter jurisdiction over the action. We agree with the Court of Appeals that the trial court had subject matter jurisdiction over this case. We disagree with the Court of Appeals that certain issues in the case need to be resolved by the IURC.

I

A

■ In Indiana, if a party is required by the Administrative Adjudication Act to exhaust its administrative remedies before an agency before obtaining judicial review of the agency decision, courts are completely ousted of subject matter jurisdiction to hear the case at all. Ind.Code § 4–21.5–5–4 (1993). Even when neither statute nor agency rule specifically mandates exhaustion as a prerequisite to judicial review, the general rule is that a party is not entitled to judicial relief for an alleged or threatened injury until the prescribed administrative remedy has been exhausted. *Wilson v. Board of Indiana Employment Sec. Div.* (1979), 270 Ind. 302, 305, 385 N.E.2d 438, 441, *cert. denied,* 444 U.S. 874, 100 S.Ct. 155, 62 L.Ed.2d 101 (1979). While we have made it clear that in such circumstances the rule is not to be applied "mechanistically," *id.,* strong policy reasons and considerations of judicial economy support application of the doctrine:

> The exhaustion doctrine is intended to defer judicial review until controversies have been channeled through the complete administrative process. The exhaustion requirement serves to avoid collateral, dilatory action of the likes of the instant action and to ensure the efficient, uninterrupted progression of administrative proceedings and the effective application of judicial review. It provides an agency with an opportunity "to correct its own errors, to afford the parties and the courts the benefit of [the agency's] experience and expertise, and to compile a [factual] record which is adequate for judicial review." *Weinberger v. Salfi,* 422 U.S. 749, 765, 95 S.Ct. 2457, 2467, 45 L.Ed.2d 522 (1975).

*Uniroyal, Inc. v. Marshall,* 579 F.2d 1060, 1064 (7th Cir.1978).

■ Exhaustion of remedies appears as an issue most frequently in cases challenging the reasonableness or validity of agency decisions or actions. In those cases, the agency

involved usually claims that the party challenging its action has not exhausted the appeal process within the agency. But whether an agency or a private party makes the "exhaustion defense," the claim is in fact one that the court is without subject matter jurisdiction and therefore *without the power* to hear the case brought before it.

This case is not a challenge to an agency regulation or action. Rather, it is a lawsuit for breach of contract and fraud between two private parties. But because (i) the alleged breach was caused in part by utility's failure to comply with IDEM regulations and (ii) certain of the remedies sought for failure to supply adequate utility service are alleged to be within the authority of the IURC, regulatory determinations are arguably necessary to resolve the case.

### B

■ The doctrine of primary jurisdiction is an invention of the United States Supreme Court to deal with the problem that arises when the courts and an agency both have claims to jurisdiction of an issue in a case that has come before a court. *See Texas & Pac. Ry. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907). One of the best summaries of the doctrine of true primary jurisdiction [1] has come from the Seventh Circuit:

The doctrine [of primary jurisdiction] comes into play when a claim is cognizable in a court but adjudication of the claim "requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of [an] administrative body; in such a case, the judicial process is suspended pending referral of such issues to the administrative body for its views." *United States v. Western Pacific R.R. Co.*, 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956).

No fixed formula exists for applying the doctrine of primary jurisdiction, but "in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over." *Far East Conference v. United States*, 342 U.S. 570, 574, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952). *Hansen v. Norfolk & Western Ry. Co.*, 689 F.2d 707, 710 (7th Cir.1982).[2]

■ The doctrines of primary jurisdiction and exhaustion of remedies, therefore, are related but *significantly* different. The doctrine of primary jurisdiction is not, in our view, jurisdictional but prudential; the doctrine of exhaustion of remedies, on the other hand, is jurisdictional and, where applicable, makes a Trial Rule 12(B)(1) motion for lack of jurisdiction over the subject matter appropriate.[3]

1. There is much confusion in the cases that stems from conflicting uses of the phrase "primary jurisdiction." The usual use of the term refers to the primary *exclusive* jurisdiction of an administrative body to hear a claim or make a determination. The *doctrine* of primary jurisdiction, however, is applicable in cases where courts and agencies have concurrent jurisdiction over a claim or issue within a claim, or where an agency has exclusive jurisdiction over some issue within a claim, upon the determination of which a decision on the court claim as a whole depends. *See, e.g., United States Envtl. Protection Agency v. Environmental Waste Control, Inc.*, 710 F.Supp. 1172 (N.D.Ind.1989), *aff'd*, 917 F.2d 327 (7th Cir.1990), *cert. denied*, 499 U.S. 975, 111 S.Ct. 1621, 113 L.Ed.2d 719 (1991).

2. *Western Pacific R.R. Co.* is now the U.S. Supreme Court case most often referred to in discussions of primary jurisdiction. *See, e.g., Reiter v. Cooper*, —— U.S. ——, ——, 113 S.Ct. 1213, 1220, 122 L.Ed.2d 604 (1993).

3. A leading treatise argues that both primary jurisdiction and exhaustion of remedies are prudential doctrines "created by the courts to allocate between courts and agencies the initial responsibility for resolving issues and disputes in a manner that recognizes the differing responsibilities and comparative advantages of agencies and courts." 3 Kenneth Culp Davis and Richard J. Pierce, Jr., *Administrative Law Treatise*, § 14.1 at 272–73 (3rd ed. 1994). We acknowledge that the doctrine of exhaustion of remedies may *appear* to be merely prudential at times because of the numerous exceptions to its application that courts have carved out over time. *E.g., Spencer v. State* (1988), Ind.App., 520 N.E.2d 106, 110, *reh'g denied, trans. denied* (exception to application of exhaustion doctrine when exhaustion of the administrative remedies provided would be futile). However, we believe that where statutes create agency authority and courts therefore require exhaustion of administrative remedies with the concomitant limitations on judicial review of agency decisions, the grounds for dismissal are lack of subject matter jurisdiction.

## C

In Indiana, as a matter of state administrative law, the cases involving the doctrine of primary jurisdiction fall into at least two groups. There is a categorical approach that says if *any* issue or claim is within the jurisdiction of an administrative body, then the whole case falls within that body's jurisdiction, even if the agency is unable to grant all of the remedies sought. *Indiana Util. Reg. Comm'n v. Gary Joint Venture* (1993), Ind. App., 609 N.E.2d 7, *reh'g denied, trans. denied; Shlens v. Egnatz* (1987), Ind.App., 508 N.E.2d 44, *reh'g denied, trans. denied; Indiana Forge & Machine Co. v. Northern Indiana Pub. Serv. Co.* (1979), Ind.App., 396 N.E.2d 910. The second approach attempts to apply a more flexible federal version of the doctrine, sending to an agency only those issues within the agency's expertise or jurisdictional bailiwick generally. *E.g., South Eastern Indiana Natural Gas Co. v. Ingram, supra; Metropolitan Dev. Comm'n v. Waffle House* (1981), Ind.App., 424 N.E.2d 184.[4]

## II

When confronted with cases in which a court's subject matter jurisdiction is contested on grounds of "exhaustion of remedies," "primary jurisdiction," or similar arguments alleging that the issues presented are within the jurisdiction of regulatory or administrative agencies to resolve, we believe that a trial court in Indiana should analyze the issues as follows.

## A

First, in order to determine whether a case is properly before the trial court, the court should examine each issue presented by the case. If at least one of the issues involved in the case is within the jurisdiction

of the trial court, the entire case falls within its jurisdiction, even if one or more of the issues are clearly matters for exclusive administrative or regulatory agency determination. Where at least one of the issues or claims is a matter for judicial determination or resolution, the court is not ousted of subject matter jurisdiction by the presence in the case of one or more issues which arguably are within the jurisdiction of an administrative or regulatory agency.[5] We therefore disapprove the categorical approach of *Indiana Utility Reg. Comm'n v. Gary Joint Venture, Shlens v. Egnatz,* and *Indiana Forge & Machine Co., Inc. v. Northern Indiana Pub. Serv. Co., supra,* and approve the more flexible federal version of the doctrine as set forth in *South Eastern Indiana Natural Gas Co. v. Ingram,* and *Metropolitan Dev. Comm'n v. Waffle House, supra.*

## B

Once a trial court has determined that it has subject matter jurisdiction, it must review the issues in the case claimed to be matters within the purview of an administrative or regulatory agency to determine whether the doctrine of primary jurisdiction should be invoked, *i.e.,* whether the court, while retaining jurisdiction over the case, should refer an issue or some subset of issues in the case to the expert agency for its opinion or final decision. *See United States v. Philadelphia Nat'l Bank,* 374 U.S. 321, 353, 83 S.Ct. 1715, 1736, 10 L.Ed.2d 915 (1963).

In making this determination, we are mindful that some cases hold that invocation of the doctrine of primary jurisdiction is mandatory and other cases hold that it lies within a trial court's discretion. *Compare Reiter v. Cooper,* — U.S. —, —, 113

---

4. *See also Indiana Bell Tel. Co. v. Friedland* (1978), 175 Ind.App. 622, 373 N.E.2d 344, *cert. denied,* 440 U.S. 916, 99 S.Ct. 1233, 59 L.Ed.2d 465 (1979), which makes no mention of the federal doctrine, but stands for the proposition that when an issue in a court case should properly be brought before an administrative agency, the court action for damages must be *"pursuant and subsequent to"* the agency decision. *Id.* at 633, 373 N.E.2d at 351 (emphasis in the original).

5. While this inquiry results in the conclusion that the trial court has subject matter jurisdiction

over this case, this will not be so when all of the issues presented fall within the exclusive jurisdiction of the relevant administrative or regulatory agency, *e.g.,* when a plaintiff has failed to exhaust its administrative remedies on all issues presented. *E.g., Board of Sch. Comm'rs of City of Indianapolis v. Eakin* (1983), Ind., 444 N.E.2d 1197, 1201; *State ex rel. Paynter v. Marion Super. Ct. No. 5* (1976), 264 Ind. 345, 353, 344 N.E.2d 846, 851.

S.Ct. 1213, 1220, 122 L.Ed.2d 604 (1993) (primary jurisdiction "requires the court to enable a 'referral' to the agency, staying further proceedings....") and *Philadelphia Nat'l Bank,* 374 U.S. at 353, 83 S.Ct. at 1735 (primary jurisdiction "requires judicial abstention in cases where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme") with *United States v. Western Pacific R.R. Co.,* 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956) ("No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation.").

We do not believe that these cases are as much in conflict with each other as they reflect differing ways of dealing with the three different fact patterns that can arise in these types of claims.

■ 1. Certainly a trial court must invoke the doctrine of primary jurisdiction where one (but less than all) of the issues in the case requires exhaustion of remedies before judicial review can occur. *See* discussion of exhaustion of remedies, Part I–A, *supra.* Those issues must be referred to the agency for determination.

■ 2. When no issue of exhaustion of remedies or other clear requirement of referral of the issue in question to an agency is presented, the court must next decide whether the opposite fact pattern is present, *i.e.,* whether the administrative or regulatory agency truly has any jurisdiction over an issue at all. In such situations, of course, the

doctrine of primary jurisdiction cannot be invoked because there is nothing to refer to the administrative or regulatory agency because there is nothing that the agency has the legal authority to decide. It is in this category that we place the claims in this case. *See* Part III, *infra.*

■ 3. The third fact pattern arises where an issue in the case is one that can be decided by either the trial court or by the administrative or regulatory agency. In such cases, the decision whether to invoke the doctrine of primary jurisdiction is within the discretion of the trial court. The questions to ask in deciding whether to invoke the doctrine include (i) what sort of facts will arise and whether the kind of factfinding involved will be within the special competence and expertise of an administrative body,[6] and (ii) to what degree uniformity in the regulatory scheme is desirable and to what degree a court decision might affect the uniformity of a regulatory scheme.[7] Some courts have adopted a pure balancing test to decide whether a court should invoke the doctrine. *See, e.g., Wagner and Brown v. ANR Pipeline Co.,* 837 F.2d 199, 201 (5th Cir.1988) (court considering deferring to agency's primary jurisdiction must weigh benefits of obtaining agency's aid against need to resolve litigation expeditiously and may defer only if benefits of agency review exceed costs imposed on parties).

We believe that a trial court in exercising its discretion will likely find the doctrine especially applicable where an agency has already exercised its authority to decide an issue and one customer of a regulated industry is suing another. *See Federal Power*

---

**6.** *See Ricci v. Chicago Mercantile Exchange,* 409 U.S. 289, 302, 93 S.Ct. 573, 580, 34 L.Ed.2d 525 (1973) (invocation of primary jurisdiction is appropriate when an agency resolution is likely to be a "material aid" in the resolution of the court dispute); *Pennsylvania R. Co. v. Day,* 360 U.S. 548, 551–552, 79 S.Ct. 1322, 1324, 3 L.Ed.2d 1422 (1959) (in dealing with regulated railroads, there is a great need for "an expert administrative board" and a need for "experience and expert knowledge"); *Western Pacific,* 352 U.S. at 64, 77 S.Ct. at 165 (ICC had greater expertise in interpreting freight tariffs in the circumstances presented); *Far East Conference v. United States,* 342 U.S. 570, 575, 72 S.Ct. 492, 494, 96 L.Ed.

576 (1952) (in interpreting the circumstances that underlie legal issues, agencies may be better equipped than courts "by specialization, by insight gained through experience, and by more flexible procedure.").

**7.** *See, e.g., Day,* 360 U.S. at 552, 79 S.Ct. at 1325 (in regulating railroads there is a need for uniformity of interpretation); *Far East Conference* 342 U.S. at 575, 72 S.Ct. at 494–95 (uniformity and consistency are secured when first resort is made to agency with expertise and when limited judicial review of the agency determination is exercised).

*Comm'n v. Louisiana Power & Light Co.,* 406 U.S. 621, 92 S.Ct. 1827, 32 L.Ed.2d 369 (1972). On the other hand, we believe the doctrine will generally be found *not* to be applicable when one of the parties before the court is the agency to which the issue would be referred. *See United States v. Elrod,* 627 F.2d 813, 818 (7th Cir.1980); *Interstate Commerce Comm'n v. Maine Cent. R.R. Co.,* 505 F.2d 590, 594 (2d Cir.1974). We also note that many of the cases hold that the doctrine of primary jurisdiction should not be invoked when the issue is whether an agency standard has been violated (as opposed to whether an agency standard is reasonable).[8] *See, e.g., Shell Oil Co. v. Nelson Oil Co., Inc.,* 627 F.2d 228, 232 (Temp.Emer.Ct.App.1980), *cert. denied,* 449 U.S. 1022, 101 S.Ct. 590, 66 L.Ed.2d 484 (1980); *United States v. Elrod,* 627 F.2d at 818; *Massa v. Peabody Coal Co.,* 698 F.Supp. 1446, 1451 (S.D.Ind.1988).

### C

While we hold below that the doctrine of primary jurisdiction is not applicable in this case, we make several observations on the subject of "referral" in cases where the doctrine is properly invoked. The United States Supreme Court recently said, in effect, that referral is a misnomer and that what is required is for the plaintiff to take the issue formally before the appropriate agency. *Reiter v. Cooper,* —— U.S. ——, —— n. 3, 113 S.Ct. 1213, 1220 n. 3, 122 L.Ed.2d 604 (1993).[9] A second approach to referral has the trial court certify a question to the appropriate agency. *See, e.g., International Ass'n of Heat & Frost Insulators & Asbestos Workers v. United Contractors Ass'n, Inc.,* 483 F.2d 384, 400 (3rd Cir.1973) (court may certify question to NLRB), *opinion amended by* 494 F.2d 1353 (3d Cir.1974). A third approach has the trial court request an amicus brief from the appropriate agency. *See Ryan v. Chemlawn Corp.,* 935 F.2d 129 (7th Cir.1991); *Distrigas of Mass. v. Boston Gas Co.,* 693 F.2d 1113, 1119 (1st Cir.1982) (Breyer, J.) (memorandum and order to clerk of district court to request an amicus brief from FERC) (citing Louis L. Jaffe, *Primary Jurisdiction,* 77 Harv.L.Rev. 1037, 1047 (1964)). We believe the approach taken by the United States Supreme Court in *Reiter* will usually be required, although requesting an amicus brief from an agency may help expedite litigation where referral is not required under Part II–B–1, *supra.* We believe there is much merit in the certified question approach and have asked our Rules Committee

---

**8.** At the same time, when an activity is *arguably* subject to agency regulation, it is the administrative agency that initially decides the argument while the court makes the final determination. *See Ricci,* 409 U.S. at 299–300, 93 S.Ct. at 579 (primary jurisdiction applies when conduct at issue in a court action "is ... at least arguably protected or regulated by ... [a] regulatory statute."); *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 244–45, 79 S.Ct. 773, 779–80, 3 L.Ed.2d 775 (1959) ("When an activity is arguably subject to § 7 or § 8 of the [National Labor Relations] Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted."); *Jacksonville Maritime Ass'n v. City of Jacksonville,* 551 F.Supp. 1130, 1137 (M.D.Fla.1982) (question of whether party falls within coverage of statute must be determined in first instance by agency responsible for administering statute). *But cf. Gordon v. New York Stock Exch.,* 422 U.S. 659, 95 S.Ct. 2598, 45 L.Ed.2d 463 (1975) (a court need not refer a jurisdictional issue to an agency if the court is confident that it can answer the question itself without resort to agency expertise) and *Gentry v. United Slate, Tile & Constr. Roofers* (1974), 162

Ind.App. 246, 319 N.E.2d 159, 164–65 (the preemption doctrine of *Garmon* does not apply where there exists a statutory right to maintain an action because the NLRB protects public interests while a suit brought under a statute protects private interests; and it is the different interests protected that justifies the anomaly of permitting conflicting conclusions in the same factual setting).

**9.** The Court said:

Referral is sometimes loosely described as a process whereby a court refers an issue to an agency. But the ICA (like most statutes) contains no mechanism whereby a court can on its own authority demand or request a determination from the agency; that is left to the adversary system, the court merely staying its proceedings while the shipper files an administrative complaint.... *Mitchell Coal [ & Coke Co. v. Pennsylvania R. Co.,* 230 U.S. 247, 33 S.Ct. 916, 57 L.Ed. 1472] [(1913)] spelled out the actual procedure contemplated [by referral], holding that further action should "be stayed so as to give the plaintiff a reasonable opportunity within which to apply to the commission for a ruling as to the reasonableness of the practice." (citations omitted).

to make a recommendation to us in that regard.

### III

We agree with the Court of Appeals that the trial court had subject matter jurisdiction over this case and that it was improper to grant utility's motion to dismiss the case. Developer presented a claim for breach of contract. The construction of contracts and actions for their breach are matters for judicial determination. *See Suyemasa v. Myers* (1981), Ind.App., 420 N.E.2d 1334, 1339 (quoting *State ex rel. Young v. Noble Cir.Ct.* (1975), 263 Ind. 353, 356–57, 332 N.E.2d 99, 101); Ind.Code § 33–5–25–5 (1993). Developer also advanced a claim of fraud, which is also a matter reserved for judicial resolution. *Citizens Gas & Coke Util. v. Sloan,* 136 Ind.App. 297, 310, 196 N.E.2d 290, 296, *reh'g denied* (1964), 136 Ind.App. 297, 197 N.E.2d 312; *see State ex rel. Young,* 263 Ind. at 356–7, 332 N.E.2d at 101; Ind.Code § 33–5–25–5. Under the rule enunciated in Part II–A, *supra,* the trial court had subject matter jurisdiction over this case.[10]

However, unlike the Court of Appeals, we do not find it necessary to invoke the doctrine of primary jurisdiction because we are unable to find any issue presented that is within the jurisdiction of the administrative or regulatory agencies. In the Court of Appeals, utility argued that developer had not exhausted its remedies before either the IDEM or the IURC. With respect to IDEM, utility argued that developer's failure to petition for review of IDEM's denial of developer's construction permits was a failure to exhaust the administrative remedies available through IDEM. With respect to the IURC, utility argued that the relief sought by developer in the specific performance count of its complaint for alleged inadequate or unavailable sewage disposal services was within the sole and exclusive jurisdiction of the IURC.

The Court of Appeals rejected utility's argument regarding administrative remedies available through IDEM. *Austin Lakes,* 622

N.E.2d at 973. We agree, although for somewhat different reasons. If developer's contention in this case was that IDEM had erroneously denied developer the construction permit it sought, developer would have had to exhaust administrative review of its claim before seeking judicial review. But here developer claims that utility breached its contractual obligation to developer, not that the administrative agency erred in any way. Under these circumstances, IDEM's denial of developer's application was simply a fact or evidence in support of developer's claims of breach of contract and fraud against utility. *Cf. United States v. Elrod,* 627 F.2d at 818 ("Resolution of the contractual issues in this case does not implicate technical questions beyond the judiciary's traditional competence"). And to the extent that utility's argument here is that developer had a duty to mitigate its damages by appealing the permit denial, we agree with the Court of Appeals that any such mitigation of damages claim belongs in the trial court, not IDEM.

While rejecting utility's claims that developer had not exhausted its remedies before IDEM, the Court of Appeals did find certain of the claims in the case to be within the jurisdiction of the IURC. Concluding that recovery on the claim for breach of contract depends on whether Avon Utilities failed "to keep itself in compliance with federal and state law and by failing to expand its plant and physical facilities to provide the promised service," the Court of Appeals found such determinations to be "entrusted by the legislature to the IURC" and that an "Indiana trial court must defer to the IURC for resolution of these issues." *Austin Lakes,* 622 N.E.2d at 975. The Court of Appeals also found IURC has jurisdiction over developer's claim given the prayer for specific performance of the alleged contract:

> Specific authority to require of Avon Utilities reasonably adequate sewage disposal services and facilities is granted the IURC in I.C. 8–1–2–89(h), and the IURC has the express authority to revoke a cer-

---

10. Utility recognized that there were at least some portions of developer's complaint over which the agencies had no jurisdiction. Br. of Appellees in Ct. of Appeals at 21.

tificate of territorial authority for the failure of the holder to furnish reasonably adequate sewage disposal service within the areas defined by its certificate or to comply with any other applicable order of the commission or any term, condition or limitation of its certificate. I.C. 8–1–2–89(k). That the IURC may utilize its authority to assure the furnishing of reasonably adequate sewage disposal service, particularly when the capacity of a utility is inadequate, is apparent from this court's decision in *Old State Utility v. Greenbriar Development* (1979), Ind.App., 181 Ind. App. 697, 393 N.E.2d 785, which affirms a partial revocation of a public utility's certificate of territorial authority for sewage disposal service.

*Austin Lakes,* 622 N.E.2d at 974.

We resolve these contentions in the same way as we resolved those relating to IDEM. It does not appear to us that there are any legal or factual questions here reserved for agency decision making. Developer does not seek damages for failure to provide "reasonably adequate" service or other conduct defined under the utility regulatory statute. Instead, developer seeks recovery for alleged breach of contract and fraudulent misrepresentation by utility that it was already in compliance with administrative regulations and possessed sufficient sewage treatment capacity to accommodate developer's entire residential subdivision. We agree with developer that such allegations clearly do not require an administrative determination whether or not utility failed to provide "reasonably adequate" level of service because they do not allege that utility's level of service fell below that general standard.

As to the remedy of specific performance, again developer does not challenge any decision of the IURC. It seeks only specific performance of its contract, an equitable remedy sometimes available in contract cases. *Neel v. Cass Co. Fair Ass'n* (1968), 143 Ind.App. 339, 344–45, 240 N.E.2d 546, 550–51 (collecting authority). Assuming developer meets its burdens of proof as to the existence of the contract and breach thereof—matters for determination by the trial court, not by the agency—we see no basis to call upon a regulatory agency to determine any contract remedy to which developer may be entitled.

In sum, this case involves a private dispute over a voluntary contractual agreement and allegations of fraud. Neither party disputes that Avon could enter into a private contract with Austin Lakes so long as that contract did not impair its ability to provide service to the public. For the reasons set forth above, such a dispute is a matter to be resolved by the courts, not IDEM or IURC.

*Conclusion*

Accordingly, we grant transfer, vacate the opinion of the Court of Appeals, Ind.Appellate Rule 11(B)(3), reverse the judgment of the trial court, and remand this cause to the trial court for further proceedings consistent with this opinion.

SHEPARD, C.J., and DeBRULER, DICKSON and SELBY, JJ., concur.