AREA PLAN COMMISSION OF EV-
ANSVILLE and Vanderburgh Coun-
ty, Appellant–Defendant,

v.

Timothy J. MAJOR, Appellee–Plaintiff.

No. 82A01–9812–CV–472.

Court of Appeals of Indiana.

Nov. 30, 1999.

Rehearing Denied Feb. 1, 2000.

D. Timothy Born, Shawn M. Sullivan, Terrell, Baugh, Salmon & Born, LLP, Evansville, Indiana, Attorneys for Appellant.

Leslie C. Shively, Fine & Hatfield, Evansville, Indiana, Attorney for Appellee.

## OPINION

STATON, Judge

The Area Plan Commission of Evansville and Vanderburgh County ("APC") appeals from a judgment entered in favor of Timothy Major awarding him damages for the temporary and permanent taking of his property. The APC raises three issues on appeal, which we restate as:

I. Whether the trial court lacked subject matter jurisdiction as a result of Major's failure to exhaust his administrative remedies.

II. Whether the trial court erred by admitting evidence of the specific use Major intended for the property that was taken.

III. Whether the trial court erred by instructing the jury that Major was entitled to be compensated for an intended specific use that Major had committed to at the time his property was taken.

We reverse and remand.

Major owns real property commonly known as 4905 Pollack Avenue (the "Pollack Property"). Major sought rezoning of the property from an agricultural to a commercial designation so that he could establish a mini-storage warehouse facility. The Vanderburgh County Commission approved the rezoning. Major then applied for and received an improvement location permit, allowing him to construct seven mini-storage warehouses on the Pollack Property. By July 1, 1994, four of the seven buildings had been constructed. On August 1, 1994, Barbara Cunningham, the executive director of the APC, revoked the improvement location permit for the Pollack Property.[1] Without the permit, Major could not proceed with construction of the remaining three warehouses.

In September of 1995, Major entered into an agreement with neighboring property owners by which Major agreed to build only six mini-storage warehouses on the Pollack Property. Major then applied for and received a second improvement location permit allowing him to build six warehouses. Later, Major sued the APC, alleging that it had improperly revoked his first improvement location permit and that this action constituted a temporary and permanent taking of his property without

just compensation in contravention of the United States and Indiana Constitutions. The trial court concluded that the APC had improperly revoked Major's permit and that this action was an unconstitutional taking without just compensation. The court then appointed appraisers. After a trial, a jury awarded Major $82,500 in damages. The trial court entered a judgment on this verdict in the amount of $112,683.68, including the amount of the verdict, statutory interest, and attorney fees. The APC appeals.

I.

*Exhaustion of Administrative Remedies*

The APC contends that Major failed to exhaust his administrative remedies prior to bringing his lawsuit and that this failure deprived the trial court of subject matter jurisdiction over Major's suit. Specifically, the APC contends that Major was required by IND.CODE § 36–7–4–918.1 (1993) to appeal the revocation of his first improvement location permit for the Pollack Property to the local Board of Zoning Appeals ("BZA").

 If a statute requires a party to exhaust his administrative remedies prior to obtaining judicial review, then a trial court lacks subject matter jurisdiction to hear the case until those remedies are exhausted. *Austin Lakes Joint Venture v. Avon Utilities, Inc.,* 648 N.E.2d 641, 644 (Ind.1995). For instance, the Administrative Orders and Procedures Act ("AOPA") specifically requires exhaustion prior to bringing a petition for judicial review under its provisions. *Id.;* IND.CODE § 4–21.5–5–4 (1998). Indiana's Local Planning and Zoning Law governs the present case. *See* IND.CODE § § 36–7–4–100 to 36–7–4–1342 (1993 & Supp.1995). Unlike the AOPA, the Local Planning and Zoning Law contains no explicit exhaustion re-

---

1. The question of what person or entity revoked the improvement location permit is central to this appeal. As discussed below, we conclude that the executive director of the APC revoked the permit; thus, we recite this fact here. The reason for revoking this permit was disputed at trial, but that reason has no bearing on the outcome of this appeal.

quirement. Even where an administrative scheme does not expressly mandate exhaustion, however, the general rule remains "that a party is not entitled to judicial relief for an alleged or threatened injury until the prescribed administrative remedy has been exhausted." *Austin Lakes*, 648 N.E.2d at 644.

In the present case, the trial court concluded that "Major was not required to exhaust any further administrative remedies as a condition precedent to bring this lawsuit since there was no remedy available and thus, it would have been futile for Major to utilize any further administrative remedies." Record at 137–38. Thus, the court concluded that it had subject matter jurisdiction and refused to dismiss the case. Although we agree that the trial court had subject matter jurisdiction, we arrive at this conclusion in a different fashion.

■ In *Austin Lakes*, our supreme court created a framework for analyzing challenges to a court's subject matter jurisdiction based upon a party's alleged failure to exhaust his administrative remedies. 648 N.E.2d at 646–48. The first step in that framework is for the court to identify each issue presented by the case. *Id.* at 646. Next, the court must determine whether any of these issues are within the trial court's jurisdiction. *Id.* If even one issue is within the court's jurisdiction, then the entire case falls within the court's subject matter jurisdiction and the lawsuit need not be dismissed. *Id.*

■ Our review of Major's complaint reveals that he presented essentially two issues for resolution by the trial court: (1) whether the APC improperly revoked the improvement location permit for the Pollack Property; and (2) whether Major had a vested property interest in the improvement location permit such that the APC's revocation of the permit constituted a tak-

ing without just compensation in contravention of the United States and Indiana Constitutions. It is the first issue that the APC contends should have been brought before the BZA pursuant to IC 36–7–4–918.1. For the moment, we do not address it, but assume that Major was required to appeal the revocation to the BZA. The second issue is a constitutional question that does not fall within the BZA's expertise, and the APC does not argue that Major was required to bring this issue before the BZA. However, the existence of the constitutional question depends in part upon Major's failure to take the first issue to the BZA. Had Major appealed the revocation of the permit to the BZA and had the BZA overturned the revocation, thereby restoring Major's initial permit, there would have been no permanent taking of Major's property. The APC contends that Major should not be permitted to forgo an available administrative appeal of an adverse decision and later seek damages that could have been avoided had he appealed the improper decision.

Although the APC's argument has merit, we must reject it for the reason that Major would have had a valid claim for damages even if he had pursued his available administrative remedies. If Major had appealed and the BZA had overturned the revocation, Major would have no longer had a claim for the permanent taking of his property since his permit would have been reinstated. Nevertheless, he still would have had a temporary taking claim for the damages he incurred between the initial improper revocation of his permit and the time of its reinstatement.[2] *See First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 107 S.Ct. 2378, 2389, 96 L.Ed.2d 250 (1987) (a temporary regulatory taking is compensable pursuant to the Fifth and Fourteenth Amendments of the United States Constitution). Accordingly,

2. We assume that Major indeed had a property interest in the improvement location permit and that its revocation was a taking without

just compensation, conclusions reached by the trial court and unchallenged on appeal.

at least a portion of the taking question was within the trial court's jurisdiction. The trial court had subject matter jurisdiction over Major's case.

█ ▪ Concluding that the trial court has subject matter jurisdiction does not end the inquiry under the *Austin Lakes* framework. The next step is to determine whether the doctrine of primary jurisdiction should be invoked. *Austin Lakes,* 648 N.E.2d at 646. Unlike exhaustion of remedies, the doctrine of primary jurisdiction is "prudential," not jurisdictional. *Id.* at 645. Nonetheless, it still requires a court to refer "an issue or some subset of issues" in certain cases "to the expert agency for its opinion or final decision." *Id.* at 646. The "trial court *must* invoke the doctrine of primary jurisdiction where one (but less than all) of the issues in the case requires exhaustion of remedies before judicial review can occur." *Id.* at 647 (emphasis added). In such a case, the trial court retains jurisdiction, but stays its proceedings while the plaintiff formally takes the issue requiring exhaustion before the appropriate administrative agency. *Id.* at 648.

We return to the question of whether Major was required to appeal the revocation of his improvement location permit to the BZA. If an appeal was required, then the trial court erred by deciding that the permit had been improperly revoked as this question should have been reserved for the BZA's determination in the first instance. IC 36–7–4–918.1 specifies the types of appeals the BZA must hear. It provides:

A board of zoning appeals shall hear and determine appeals from and review:

(1) any order, requirement, decision, or determination made by an Administrative official, hearing officer, or staff member under the zoning ordinance;

(2) any order, requirement, decision, or determination made by an administrative board or other body except a plan commission in relation to the enforcement of the zoning ordinance; or

(3) any order, requirement, decision, or determination made by an administrative board or other body except a plan commission in relation to the enforcement of an ordinance adopted under this chapter requiring the procurement of an improvement location or occupancy permit.

The APC argues that the executive director of the APC revoked Major's improvement location permit. Accordingly, it concludes that subsection (1) of IC 36–7–4–918.1 provides for an appeal to the BZA because the revocation was an "order, requirement, decision, or determination of an administrative official ... or staff member under the zoning ordinance." Major contends that the APC, not the executive director, revoked the permit. As such, Major concludes that an appeal was not necessary because, he argues, subsection (3) specifically provides that decisions of a plan commission regarding improvement location permits are not appealable to the BZA. As each argument hinges on whether the APC or the executive director actually revoked the improvement location permit, we consider this question.

The Local Planning and Zoning Law specifies that the authority to issue improvement location permits may be delegated by the local zoning ordinance "to the area plan commission or to other appropriate officers of the county or municipality." IND.CODE § 36–7–4–802(b) (1993). The Local Planning and Zoning Law makes no mention of the authority to revoke improvement location permits, but it is both logical and consistent with the act's purpose to conclude that the power to revoke may also be delegated by the local zoning ordinance to the area plan commission or other appropriate officers. Unfortunately, the Vanderburgh County Zoning Code (the "Zoning Code") is not a model of clarity as to whom the authority to issue and revoke improvement location permits has been delegated.

Section 153.156(B)(1) of the Zoning Code addresses the revocation of improvement location permits.[3] It provides: "An improvement location permit may be revoked after at least ten days written notice, if the conditions of the zoning code requirements and/or the conditions of the permit are not met." This subsection does not address what entity or official is responsible for revoking improvement location permits; it only provides the conditions under which the permit may be revoked. Given the Zoning Code's silence, we conclude that its drafters must have intended that the entity or official responsible for issuing permits also have responsibility for revoking the permits. Therefore, we review the provisions regarding the issuance of improvement location permits.

Section 153.156(B)(1) of the Zoning Code provides that "[n]o building or other structure shall be erected, moved, relocated, added to, or structurally altered; nor shall any building, structure or land be established or changed in use without first obtaining an improvement location permit from the Area Plan Commission."[4] Reading this provision alone leads to the firm conclusion that the APC is responsible for issuing improvement location permits. However, considering it in context with the remaining provisions of the Zoning Code and with the Local Planning and Zoning Law leads us to the opposite conclusion that the executive director, not the APC, is responsible for issuing and revoking improvement location permits.

Section 153.156(B)(2) of the Zoning Code requires that applications for improvement location permits be filed with the APC. Unless the applications relate to a one-family dwelling, a duplex, or an accessory structure in an approved subdivision, the applications are then forwarded to the Site Review Committee, which consists of the executive director of the APC, a traffic engineer, the county engineer, and one other person appointed by the President of the APC. VANDERBURGH COUNTY ZONING CODE § 153.156(B)(3). The Site Review Committee then either approves or disapproves the site plan. VCZC § 153.156(B)(4). Finally, section 153.156(B)(7) of the Zoning Code provides: "*The Director* of the Area Plan Commission *shall,* after approval of the site plan by the Site Review Committee, *issue an improvement location permit* if the building and/or use conform to this chapter." (emphases added). Too, section 153.155 of the Zoning Code indicates that the director's duties include "issue[ing] improvement location permits." These provisions indicate that the APC as an administrative body plays no role in issuing improvement location permits; rather, the director does so with the assistance of the Site Review Committee in certain cases.

Furthermore, the Local Planning and Zoning Law creates an administrative system in which it is more consistent to conclude that the director, not the APC itself, actually issued and revoked Major's permit in this case. IND.CODE § 36–7–4–302(a) (1993) provides: "Action of a plan commission is not official, unless it is authorized, at a regular or special meeting, by a majority of the entire membership of the plan commission." It does not appear from the record in this case that any "official" action, as contemplated by IC 36–7–4–302(a), took place with respect to the issuance or revocation of Major's permit. Major's permit states, in pertinent part:

> Pursuant to the provisions of the Zoning Ordinance, *by virtue of the authority vested in the Area Plan Commission of Evansville and Vanderburgh County* by said Ordinance, the Structure, Building, or Premises, and the Proposed use thereof, conform with all the requirements of said Zoning Ordinance and *this permit is issued* ....

---

3. *Section 153.156* of the Zoning Code contains two subsection (B)s. Here, we refer to the second subsection (B).

4. This is the first subsection (B) of § 153.156.

Record at 465 (emphases added). Although the permit implies that it was actually issued by the APC, the language of the permit does not reference any official action at a regular or special meeting of the APC. Although an area plan commission itself may be delegated the authority to issue improvement location permits under IC 36–7–4–802(b), this section does not also allow an area plan commission to dispense with the requirement that it act only at regular or special meetings by majority vote. We also note that the APC's authority was not mentioned when the executive director of the APC notified Major of the permit's revocation.[5] We conclude that the executive director revoked Major's improvement location permit.

▪▪ Because the revocation of Major's permit was an order or decision of an administrative official under the zoning ordinance, it was appealable to the BZA pursuant to IC 36–7–4–918.1(1). Generally, the fact that an administrative appeal exists mandates that a party pursue that remedy prior to obtaining judicial relief. *Austin Lakes*, 648 N.E.2d at 644. However, Major argues that this case falls within an exception to the rule providing that an administrative remedy need not be exhausted where it is inadequate or where pursuit of it would be futile. *Indiana State Bldg. and Const. Trades Council v. Warsaw Community Sch. Corp.*, 493 N.E.2d 800, 806 (Ind.Ct.App.1986).

▪ Major first argues that even if he had appealed and the permit had been restored, the BZA could not have awarded him damages for the taking of his property. While it is true that the BZA could not have awarded him monetary damages for the taking of his property, it could have restored his improvement location permit, and the permanent injury resulting from Major's inability to construct the seventh building on the Pollack Property could have been avoided. Moreover, after the restoration of his permit, Major would not have been prevented from suing for the temporary taking of his permit. *See First English Evangelical Lutheran Church,* 107 S.Ct. at 2389.

Major also argues that his financial condition at the time the permit was revoked prevented him from appealing the revocation to the BZA. He contends that he was required to pursue a quicker remedy by negotiating with the neighboring property owners, and that the resulting agreement prevented him from constructing the seventh building on his property. Thus, he contends that the remedy of appealing to the BZA would have been inadequate. Major cites the trial court's finding of fact in which the court concluded that Major was "forced to enter into an Agreement with complaining property owners" due to his limited financial resources and his need for immediate resolution. Record at 137.

Initially, we note that the trial court's conclusion that it was not deprived of subject matter jurisdiction due to the exhaustion of remedies doctrine was not based upon its finding that Major needed an immediate resolution. Rather, the court concluded that Major was not required to exhaust administrative remedies because "no remedy [was] available." Record at 137. Thus, the court did not conclude that Major's remedy was inadequate; it concluded that no remedy existed. As already discussed, we conclude that a remedy did exist; Major could have appealed to the BZA.

Moreover, we are unpersuaded that Major's remedy was inadequate. Major entered into the agreement with the neighboring property owners over thirteen months after his first improvement location permit was revoked. This delay is inconsistent with the conclusion that an appeal to the BZA would not have resolved the matter quickly enough, and thus, that

---

5. The revocation letter stated: "Pursuant to Chapter 153, Section 156 of the Code of Ordinances of Vanderburgh County (Zoning Code), your Improvement Location Permit (# 931495) has hereby been revoked." Record at 495.

the remedy was inadequate. Major did testify that the delay was caused by the attorney of the property owners; however, Major was not prevented from pursuing the appeal during this delay. We conclude that Major was required to appeal the revocation of his permit to the BZA.

We hold that the trial court had subject matter jurisdiction to consider Major's lawsuit. However, under the doctrine of primary jurisdiction, the trial court was required to stay its proceedings while Major appealed the propriety of the permit revocation to the BZA. Accordingly, we reverse the judgment of the trial court and remand with instructions that the trial court stay its proceedings until Major takes an appeal of the initial permit revocation to the BZA.

## II.

### *Intended Specific Purpose Evidence*

Although our resolution of the first issue requires that we reverse and remand, we choose to address the APC's second and third issues since they may recur on remand. At the damages trial, Major introduced testimony regarding the losses he incurred as a result of not building the seventh warehouse on the Pollack Property. The APC contends that the trial court erred by admitting this evidence. Specifically, the APC argues that evidence of an intended specific use of property taken via eminent domain or inverse condemnation is not admissible to prove damages resulting from the taking.

▮▮▮ In *Lucre Corp. v. County of Gibson,* 657 N.E.2d 150 (Ind.Ct.App.1995), *trans. denied, cert. denied,* 519 U.S. 950, 117 S.Ct. 362, 136 L.Ed.2d 253 (1996), this court stated:

It has long been the established rule in determining the value of property taken by condemnation or appropriation the availability and adaptability of the property for uses other than that to which it is applied at the time of taking, may be taken into consideration. The pre-exist-

ing use of the land is not the sole criterion by which its value is measured.

However, it is equally well settled that the inquiry as to damages cannot go into an intended specific use, because such damages are speculative, and that such inquiry must be confined to the land with reference to its use and condition at the time of taking and not as to what use the owner might be contemplating to put it.

*Id.* at 155 (citing *City of Lafayette v. Beeler,* 178 Ind.App. 281, 381 N.E.2d 1287, 1293 (1978) (quoting 11 I.L.E. *Eminent Domain* (1958))). "Consideration may be given to the property's potential use and value, but future improvements may not be compensated for because they were not then in existence." *Lucre Corp.,* 657 N.E.2d at 155. The measure of damages for condemned property is "the fair market value for which the land could be sold if an owner was willing to sell and a buyer was willing to buy, neither under a compulsion to do so." *Id.*

▮▮▮ The APC contends that the above holdings are applicable here. It observes that the seventh warehouse was never built, and thus, the portion of the Pollack Property on which the warehouse was to be built was never improved. The APC argues that Major is not entitled to receive damages resulting from the lost income and residual value of the seventh warehouse, but that Major should receive only the fair market value of the land itself, any loss in value to the residue of his property, and any expenses he incurred in anticipation of the development of the property for the seventh warehouse. *See* IND.CODE § 32–11–1–6 (1993) (appraisers in eminent domain proceedings shall, among other things, determine the fair market value of each parcel appropriated and the damage to the residue of the land); *State v. City of Terre Haute,* 250 Ind. 613, 238 N.E.2d 459, 465 (1968) (expenses actually incurred in anticipation of property's improvement may be recovered as damages in condemnation proceeding).

Unlike the more typical inverse condemnation case, the property taken here was not land or other real property. Rather, the property taken was the initial improvement location permit for the Pollack Property. However, the value of this permit may be determined only as it relates to the actual land on which the permit allowed construction. The revocation of the permit prevented Major from building a seventh warehouse on the Pollack Property. The harm that this caused Major was no greater than if the portion of the Pollack Property on which Major intended to build the seventh warehouse had been condemned via a formal eminent domain proceeding. In such a case, Major could not have received damages for improvements that he had not yet made to the property, regardless of the fact that he was firmly committed to making those improvements. In *State v. Maplewood Heights Corp.*, 261 Ind. 305, 302 N.E.2d 782 (1973), the state initiated an eminent domain proceeding to condemn the defendant's land for a highway project. The defendant was in the process of subdividing and developing this land into a residential neighborhood. The defendant's appraisers testified regarding the damages the defendant incurred. The appraisers' damage estimate was based upon the sale value of the property if the land had been divided and sold as individual lots. Although the development had been planned the land had not yet been subdivided and improvements had not been made at the time of the taking.

Our supreme court stated that the appraisers' testimony was objectionable. *Id.* at 785. It reasoned:

The testimony should have been objected to upon the basis that it was speculative and likely to mislead the jury, in that it treated the land as developed residential lots, rather than as undeveloped or partially developed land having residential lot development as its highest and best use.... The use to which land may reasonably be devoted is a factor that bears upon its value, although it may never have been put to that use. An owner, however, is not entitled to be compensated for improvements that he has not yet made nor for profits that he might earn in the future, if he were to devote his land to a particular use.

*Id.*

Like the property owner in *Maplewood Heights,* Major had committed to a particular use for this property. However, this commitment does not entitle Major to damages for profits he might have earned had his plans not been thwarted by the governmental taking. Rather, he is entitled to the fair market value of the portion of his property taken. The fact that the property's highest and best use is as a mini-storage warehouse facility may be considered in determining the property's value, but evidence as to the profits Major lost as a result of not building the seventh warehouse is inadmissible.[6]

### III.

*Intended Specific Purpose Instruction*

The APC argues that the trial court erred by instructing the jury as follows:

The past or present use to which land is put is not the only criterion to be considered in determining its value.

In determining the amount of compensation that a landowner is entitled to recover as a result of the taking, you may consider the highest and best use for which the property is available and could reasonably be adapted at the time of the taking.

However, a land owner is not entitled to recover damages for an intended specific use of property to arise in the future that is not in existence at the time of the

---

6. We note that this holding is equally applicable to Major's temporary taking claim resulting from his inability to construct the fifth and sixth mini-storage warehouses between the time his first improvement location permit was revoked and the time he received the second permit.

taking. That is to say, a landowner is not entitled to be compensated for improvements that he has not yet made nor for profits that he might earn in the future, if the landowner were to devote the land to an intended specific use. Instead, the damages which you award must be limited to the value of the land with reference to its use and condition at the time of the taking and not as to what use the landowner might be intending to put it. *If, however, you find in this case that the landowner was committed to a specific use of the subject property at the time of the taking, the landowner is entitled to be appropriately compensated based upon that intended use.*

Record at 971 (emphasis added). The APC contends that the emphasized portion of the instruction misstates the law. For the reasons discussed in part II, we agree. On remand, the trial court should not include the emphasized language in its instructions.

Reversed and remanded.

NAJAM, J., and RUCKER, J., concur.