### Chanelle Linet ALEXANDER, et al., Appellants–Plaintiffs,

v.

### Jack COTTEY, Marion County Sheriff, et al., Appellees–Defendants.

No. 49A02–0301–CV–32.

Court of Appeals of Indiana.

Jan. 13, 2004.

---

**2.** 42 U.S.C. § 2000e–5(e).

**3.** The Thayers' December 5, 2003 petition for oral argument is denied.

Lawrence M. Reuben, Stephen Laudig, Richard A. Waples, Indianapolis, IN, Attorneys for Appellants.

Jeffrey S. McQuary, Office of the Corporation Counsel for the City of Indianapolis, Frances Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellees.

## OPINION

BAKER, Judge.

Perhaps in the most literal sense, this case involves—what both parties refer to as—a "captive audience." Plaintiffs-appellants Chanelle Linet Alexander, et al. (the Class) are family members, friends, and attorneys who pay for collect telephone calls from inmates incarcerated in Indiana's State prisons and County jails. The Class contends that the trial court erred in granting a motion to dismiss filed by the appellees-defendants, Sheriff Jack Cottey (the Sheriff), et al., (collectively, the defendants) for lack of subject matter

jurisdiction. Specifically, the Class maintains that the claims it asserted are within the trial court's original subject matter jurisdiction and there were no administrative remedies for the Class to exhaust. Additionally, the Class maintains that the "filed-rate" or "filed-tariff" doctrine does not apply in these circumstances because no regulated utility had filed a petition to fix rates. Finally, the Class argues that Indiana decisions, federal statutes and regulatory decisions requiring de-tariffing have resulted in the demise of the filed-rate doctrine.

Concluding that the trial court erroneously determined that it lacked the authority to hear the Class' claims, we reverse the grant of the defendants' motion to dismiss and remand this cause to the trial court for further proceedings consistent with this opinion.

## FACTS [1]

The Sheriff and the State separately contracted with telephone companies to allow those entities to provide phone service in their respective jails and prisons. The services provided by the phone companies allow inmates to make only collect calls.

A contract with Ameritech Indiana (Ameritech) executed by the Sheriff does not specify that the calls must be collect or the particular rate, thus leaving those decisions to Ameritech. The contract executed by the State with AT & T Corporation required that the rate charged be equal to, or lower than, that of the dominant rate for that type of call at that particular time of day. Both of the contracts require the telephone companies to pay a portion of the revenue to the defendants. In exchange for its contract, AT & T agreed to provide the State with a 53% commission on long-distance calls made from all of the

State's pay telephones, including those at State highway rest stops, and in state-owned buildings, inns and hotel rooms. Ameritech agreed to pay the Sheriff a commission of 40% of the gross revenue of all the calls from the jail, plus a $262,000 signing bonus.

The Class filed its complaint on June 16, 2000, against Sheriff Cottey individually, and as a defendant class representative for all similarly situated Indiana Sheriffs, alleging that the State and the Sheriffs had entered into contracts with telephone companies that resulted in excessive charges for accepting collect calls from prisoners. In light of the circumstances presented, both the Class and the defendants have described the situation here as a "captive audience" case. The Class attached a contract to the complaint demonstrating that the Indiana Department of Administration has charged AT & T 53% of its billed revenues for state prisoner collect calls, a percentage which the contract contemplates will approximate $4.9 million per year in payments to the State. The various counts included claims for breach of common law regarding the duty of reasonableness owed to the plaintiffs, the unauthorized taxing of a sum of money, the unauthorized imposition of a licensing fee, unreasonable and unjust rate or service charge, unjust enrichment, money had and received, the combination to restrain and carry out restrictions on trade, a combination to increase price, and an allegation that the telephones had not provided reasonably adequate services and facilities to the Class members.

Thereafter, the defendants moved to dismiss the complaint for lack of subject matter jurisdiction, contending that the Indiana Utility Regulatory Commission

1. This court heard oral argument in this case in Indianapolis on December 8, 2003, and we commend counsel for their able presentations.

(IURC) should have jurisdiction in this cause because the Class was challenging the reasonableness of telephone rates and charges. The defendants went on to argue that our legislature has vested the IURC with the exclusive jurisdiction to determine the reasonableness of the rates that a utility charges its customers pursuant to Indiana Code section 8–1–2–38. The defendants also asserted that the claims filed by the Class were barred by the filed-rate doctrine—a rule providing that a public utility's charges that are filed with and approved by the appropriate regulatory agency are deemed lawful and not subject to attack in a court of general jurisdiction. Following a hearing, the trial court granted the motions to dismiss and entered findings of fact and conclusions of law on November 7, 2002.

In relevant part, the order provided:

4. the legislature has vested the IURC with the exclusive jurisdiction to determine the reasonableness of the rates that a utility charges its customers. Ind.Code § 8–1–2–38. The legislature has established a process whereby individuals can bring complaints 'that any of the rates, tolls, charges, or schedules, or any joint rate or rates in which such petitioner is directly interested are in any respect unreasonable or unjustly discriminatory.' Ind.Code § 8–1–2–54 et seq.

5. All of Plaintiffs' claims directly or indirectly implicate the reasonableness of the rates that the telephone companies charge to the prisoners.

6. Count I of the Complaint, entitled 'Breach of Common Law Duty of Reasonableness Owed to Plaintiffs,' is synonymous with the allegation that the telephone companies' rates are unreasonable within the meaning of Ind.Code § 8–1–2–54.

7. Similarly, Counts IV, V, VI, are synonymous with or substantially similar to the allegation that the telephone companies' rates are unreasonable within the meaning of Ind.Code § 8–1–2–54.

8. Counts VII, VIII, IX, and X, which allege violations of Indiana's anti-trust statute, are synonymous with or substantially similar to an allegation that the telephone companies' rates are unjustly discriminatory within the meaning of Ind.Code § 8–1–2–54.

9. Plaintiffs have voluntarily dismissed count XI.

10. Even if some of Plaintiffs' claims are not synonymous with an allegation that the rates charged by the telephone companies are unreasonable, all counts of the Complaint implicate the reasonableness of the rates in that it would be an essential element of each claim to prove that the rates charged by the telephone companies and paid by Plaintiffs are unreasonably high relative to the value of the service received and in comparison with rates charged to recipients or calls from non-prisoners.

11. All counts in the Complaint implicate the reasonableness of the rates charged by the telephone companies in that it would be impossible to calculate the damages incurred by Plaintiffs without comparing the actual rate charged to a hypothetical lawful rate, and hence ruling upon what the lawful rate should be.

12. Although Plaintiffs have described most of their claims in language that does not suggest regulatory enforcement, doing so does not divest the IURC of jurisdiction where the substance of Plaintiffs' claims concerns matters with which the legislature has vested it with authority. In *Town Board of Orland v. Greenfield Mills, Inc.*, 633 [663] N.E.2d 523 (Ind.1996), our Supreme Court rea-

soned that common law theories of recovery did not override the statutory scheme established by the legislature to provide the type of relief the plaintiffs sought. The Supreme Court therefore held that the plaintiffs had failed to exhaust their administrative remedies under that scheme. *Id.* at 528.

13. The gravaman [sic] of all Plaintiffs' claims is that the rates charged by the telephone companies are unreasonable or unjustly discriminatory. The original jurisdiction to consider such claims rests exclusively with the IURC. Because Plaintiffs have not initiated proceedings with the IURC, Plaintiffs have failed to exhaust their administrative remedies. . . .

14. Because Plaintiffs have failed to exhaust their administrative remedies, the Court lacks subject-matter jurisdiction to consider their claims, and Plaintiffs' Complaint should be dismissed.

Appellant's App. p. 9–11.

The trial court also held that the claims were barred by the filed-rate doctrine, inasmuch as the challenges regarding unreasonable and unjustly discriminatory rate charging had not been brought before the appropriate regulatory agency. In a separate entry, the trial court denied the motion for class certification as moot. The Class now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

■ In ruling on a motion to dismiss for lack of subject matter jurisdiction, the trial court may consider the complaint, motion, and any affidavits or evidence submitted in support thereof. *M–Plan, Inc. v. Indiana Comprehensive Health Ins. Ass'n.,* 784 N.E.2d 546, 548 (Ind.Ct.App. 2003). When the facts are undisputed or in instances where the trial court rules on a "paper record" following a hearing or argument of counsel, this court will review the decision de novo. *Id.*

### II. The Issues

■ In addressing the issue that the Class presents today, we begin our discussion by setting forth the specific contentions and arguments asserted by both parties regarding the trial court's exercise of jurisdiction in this matter. The Class first contends that the exhaustion of administrative appeals was not required in this circumstance because the claims are within the trial court's original subject matter jurisdiction. In essence, the Class asserts that the trial court should exercise jurisdiction in this matter because none of the claims were brought against a regulated utility. Rather, the Class is challenging the legality of the contracts entered into by state and local governmental agencies.

■ In support of its argument, the Class directs us to *Austin Lakes Joint Venture v. Avon Utilities, Inc.,* 648 N.E.2d 641 (Ind.1995), where our supreme court recognized that when an exhaustion of remedies defense is raised, the trial court must determine whether it has subject matter jurisdiction over the claims. As the *Austin Lakes* court observed:

In order to determine whether a case is properly before [the trial court], . . . [it] should examine each issue presented by the case. If at least one of the issues involved in the case is within the jurisdiction of the trial court, the entire case falls within its jurisdiction, . . . Where at least one of the issues or claims is a matter for judicial determination or resolution, the court is not ousted of subject matter jurisdiction by the presence in the case of one or more issues which

arguably are within the jurisdiction of an administrative or regulatory agency.

*Id.* at 646.

In essence, the *Austin Lakes* court distinguished between the requirement of "exhaustion of remedies," which is a jurisdictional requirement under Indiana Code section 4–21.5–5–4, and "primary jurisdiction," in which a court prudentially refers one or more issues in deference to a specialized agency, even though that court may have the power to hear the entire case. That is, if it is decided that the trial court is not "ousted" from subject matter jurisdiction by a plaintiff's failure to exhaust remedies, the second step is to determine whether the doctrine of primary jurisdiction should be invoked. Inasmuch as the Class has brought numerous claims against a government entity or official—which are not only about rate-making—the Class maintains that *Austin Lakes* controls. Therefore, the Class urges that its claims were properly before the trial court.

Because the Class assumes that the trial court has jurisdiction over this case, it goes on to argue that the next step in *Austin Lakes* should be applied. Specifically, there must be a determination as to whether the doctrine of primary jurisdiction should be invoked. In other words, it must be decided whether the court, while retaining jurisdiction over the case, should refer an issue or some subset of issues in the case to the expert agency for its opinion or final decision. *See id.* The resolution of this issue is subject to the trial court's discretion. *Id.* at 645. With regard to this contention, the Class points out that none of the defendants here is a public utility that would be subject to the IURC's jurisdiction. Thus, the Class maintains that the trial court erroneously characterized the challenges brought by the Class as "rate" claims, and the IURC

should not exercise jurisdiction in this matter.

The Class then argues that the doctrine of primary jurisdiction should not be applied in this case. It points out that in *Austin Lakes, South Eastern Indiana Gas Co. v. Ingram,* 617 N.E.2d 943 (Ind.Ct. App.1993) and *Indiana and Michigan Power Co. v. Runge,* 717 N.E.2d 216 (Ind. Ct.App.1999), the defendants were utilities that were within the IURC's jurisdiction. In contrast, none of the defendants here were public utilities. Thus, the Class argues that the IURC has no jurisdiction. Moreover, the Class asserts that the trial court based its ruling upon an erroneous characterization of the Class's claims as "rate" claims. It points out that there is nothing in the complaint or in the contracts between the defendants and the telephone companies that falls within the IURC's jurisdiction of "rate setting." Specifically, there is no authority permitting or requiring the IURC to interpret or regulate how governmental entities contract for services. Additionally, the Class maintains that the IURC is powerless to award monetary damages and other relief to the Class. Therefore, referral to the IURC is inappropriate in these circumstances. *See Runge,* 717 N.E.2d at 226. Inasmuch as the Class also seeks equitable relief, there is no jurisdiction with the IURC. *See United States Steel Corp., v. Northern Indiana Pub. Serv. Co.,* 482 N.E.2d 501, 506 (Ind.Ct.App.1985), *trans. denied.*

Finally, in support of their argument, the Class relies on *Arsberry v. Illinois,* 244 F.3d 558 (7th Cir.2001), where the doctrine of primary jurisdiction was considered in a case that involved a similar set of facts as presented here. In *Arsberry,* the plaintiffs were prisoners that challenged collect call rates. They sued both prison officials and telephone companies and presented a

number of federal and state law claims. On appeal, the Seventh Circuit upheld the dismissal of the federal claims and instructed the district court to relinquish jurisdiction of the state claims, and did not address the merits of those claims. *Id.* at 567. The *Arsberry* court observed:

> The doctrine of primary jurisdiction is not a bar ... If the plaintiffs in this case wanted to get a rate change, the version of the doctrine that we have discussed would kick in; but they do not, so it does not. Eventually they want a different rate, of course, but at present all they are seeking is to clear the decks— to dissolve an arrangement that is preventing the telephone companies from competing to file tariffs more advantageous to the inmates.

*Id.* at 563. In light of the above, the Class maintains that the trial court erred in granting the defendants' motions to dismiss the claims pursuant to the doctrine of primary jurisdiction.

The defendants on the other hand urge that dismissal was appropriate because the Class failed to exhaust its remedies before the IURC. The defendants posit that the Class has misconstrued the *Austin Lakes* holding and assert that the court in that case determined that a trial court has jurisdiction to hear a particular case if at least one of the claims presented falls within its jurisdiction. Here, the defendants claim that none of the Class's claims satisfy the *Austin Lakes* criteria because this case is solely about ratemaking, and the IURC has exclusive jurisdiction.

Additionally, the defendants rely upon the trial court's conclusion that there would be no way to calculate damages with respect to any of the claims that the Class presents without comparing the actual rate charged to a hypothetical lawful rate. In other words, the defendants maintain that simply couching claims in language not

suggesting regulatory enforcement does not divest the IURC of its jurisdiction.

In support of their arguments, the defendants direct us to *Town Board of Orland v. Greenfield Mills, Inc.*, 663 N.E.2d 523 (Ind.1996). In *Orland*, a group of landowners sought to prevent the construction of a sewage treatment plant near their property. The plaintiffs alleged various common law theories, and also argued that construction of the plant would violate their rights under the Indiana Constitution. The defendant town argued that the landowners failed to exhaust their remedies before the Indiana Department of Environmental Management (IDEM), which is the agency that issues permits for sewage treatment plants. The court held for the town stating that:

> While the landowners use the words 'trespass,' 'nuisance,' and 'taking of and interference with their riparian property rights,' all that they ask of the trial court is to prevent construction and operation of a sewage treatment plant because of damaging levels of pollution they allege it will discharge. But as discussed at length *supra*, the legislature has provided a statutory scheme to decide when a sewage plant will be allowed to be built and operated.

*Id.* at 528. In the end, it was held that the landowners had not exhausted their remedies before IDEM and the trial court lacked jurisdiction to hear the case. In light of *Town of Orland*, the defendants maintain that the present case should be decided by the IURC.

The defendants also note that the Class requested a declaratory judgment providing that the practice of imposing the fees, costs, or charges for collect phone calls are not allowed for or authorized by statute, and are therefore unlawful. Thus, they assert that the practice by telephone companies of imposing fees, costs, and charges

to customers is beyond the trial court's jurisdiction because such matters should rest solely within the IURC's determination. That is, the defendants maintain that the IURC must hear this case because any question about the reasonableness of rates requires that agency's expertise.

In further support of this contention, the defendants direct us to *Sims v. AT & T and its Contract with the Indiana DOC,* No. 41429, 2001 WL 1809385 (Ind. Utility Reg. Comm. Aug. 24, 2001), an administrative proceeding brought before the IURC by ten inmates of the Westville Correctional Facility. Sims and the other complainants asserted that the rates charged by AT & T were unreasonable and discriminatory, and sought to have the contract with the Department of Corrections (DOC) declared illegal. As a result, Sims requested the IURC to do the following:

> (1) order a rebate of any rate found to be collected illegally, (2) declare the current AT & T/DOC contract an illegal monopoly, (3) order rates to be charged that are non-discriminatory, reasonable and in line with those charged the general public, or (4) allow inmate families to determine who will provide long distance service from their incarcerated family members.

Slip op. at 1.

In the end, the IURC determined that it lacked jurisdiction to rescind the contract between AT & T and the DOC or to issue judgments concerning prison conditions. In its holding, the IURC commented as follows:

> The Commission cannot interfere with a contract entered into by the DOA (Department of Administration), particularly where DOA is not a party to this proceeding and outside the Commission's jurisdiction.

> Any interference with the DOA's contract with AT & T will substantially undermine the ability of the DOC to regulate and supervise the provision of telephone services to inmates at correctional facilities, which serves an important governmental interest. The Commission has recognized the deference that should be given decisions by the DOA and DOC to restrict inmates' telephone privileges. *In the Matter of an Investigation Regarding Alternative Operator Services,* Cause No. 38812 [1995 WL 446681, at *1], 1995 Ind. PUC LEXIS 180, at *3 (June 21, 1995) (modifying Commission rules to conform to correctional facilities' restrictions on long distance service being provided to inmates and stating "[T]his type of service, while not in compliance with present [Commission] AOS Rules, is intended to reduce the risk of fraud and to promote security within the institutions.").

Appellee's App. p. 115.

In light of the language quoted above, the defendants argue that the IURC should rule on the Class's claims that are presented here. Therefore, the defendants argue that the Class has misconstrued the reasoning in *Sims* to the extent that the IURC can be bypassed in these circumstances. While the Class argues that because the IURC cannot grant all of the relief desired—including the rescission of contracts and an award of monetary damages—the defendants assert that the doctrine of primary jurisdiction allows a trial court to retain jurisdiction while referring to an administrative agency those matters within its special competence.

In considering the arguments advanced by the parties, we note that the trial court here, in its findings of fact and conclusions of law, presupposes that the contracts executed between the Sheriff, the State and

the phone companies are valid. That is, the trial court impliedly holds that contracts are legal and enforceable which permit the Sheriff and the State to reap a 40% commission as well as a signing bonus at the inception of the agreement.

We first point out that Indiana Code section 5–7–2–1 relates to illegally taxed fees. Specifically, the statute provides that "[I]t shall be unlawful for any officer in this state, under color of his office, to tax, or permit to be taxed in his office, any fee or sum of money that is not legally allowable under the statute or statutes of the state." Additionally, Indiana Code section 36–1–3–8(5) provides that a unit [2] is prohibited from imposing "a license fee greater than that reasonably related to the administrative cost of exercising a regulatory power." Contrary to these statutory provisions, the Sheriff's own contract makes it clear that he is entitled to hundreds of thousands of dollars as a signing bonus, and millions of dollars of the telephone company's gross sales revenues, notwithstanding the language in the agreement that the telephone companies "shall install, operate, and maintain inmate telephones at no charge to the agent [sheriff]." Complaint, Ex. B.

Additionally, our research has revealed the existence of very specific legislation regarding the type and amount of compensation that our sheriffs may earn. For instance, under Indiana Code section 36–2–13–2.5(a), "the sheriff, the executive, and the fiscal body may enter into a salary contract for the sheriff." The sheriff's salary contract must contain a fixed amount of compensation in place of fee compensation. I.C. § 36–2–13–2.5(b)(1). Additionally, this chapter sets forth a provision requiring that the sheriff's contract contain language pertaining to the deposit by the sheriff of tax warrant collection fees into the county general fund, as well as a procedure for financing prisoners' meals. I.C. § 36–2–13–2.5(b)(3), (4).

The statutes involving tax collection fees and prisoners' meals specifically define the duties and obligations of the sheriff. To be sure, these provisions specifically and absolutely prohibit the sheriff, his officers, deputies or employees from generating any "profit from the meal allowances." I.C. § 36–2–13–2.5(b)(4)(B). The sheriff is also required to file an accounting of the expenditures for feeding prisoners with the county auditor. I.C. § 36–2–13–2.5(b)(4)(B)(5). A companion statute, Indiana Code section 36–8–10–7, requires the state examiner of the state board of accounts to fix the exact amount per meal that the sheriff of each county receives for feeding the prisoners. If the amount to be received by the Sheriff is to be increased, such a decision is to be made by the state examiner pursuant to guidelines set forth in the United States Department of Labor Consumer Price Index. I.C. § 36–8–10–7(a)(1). Finally, the allowance may not exceed two dollars per person per meal, and it shall be paid out of the general fund of the county after the sheriff "submits to the county executive an itemized statement, under oath, showing the names of the prisoners, the date that each was imprisoned in the county jail, and the number of meals served to each prisoner." I.C. § 36–8–10–7(a).

With respect to the collection of judgments from tax warrants, the sheriff is required to deposit the moneys received in the county general fund with the exception of a "ten percent collection fee." Ind.Code § 6–8.1–8–3(c)(3). However, if a salary contract is in place under Indiana Code section 36–2–13–2.5, the sheriff is required to deposit the above-referenced ten per-

---

**2.** A unit is a county, municipality, or township. Indiana Code § 36–1–2–23.

cent into the county general fund. I.C. § 6–8.1–8–3(c)(4).

In light of the above, it is apparent that these very precise and specific statutes regarding meal allowances and collecting judgments arising from tax warrants direct what a sheriff might receive in the form of compensation in addition to the salary that is set by contract. We see no such analogous statute pertaining to fees that are generated from inmates' telephone calls. Thus, we cannot glean from the record before us, including the arguments advanced by the parties, whether such an agreement allowing the Sheriff or the State in this case to retain a commission or a signing bonus from Ameritech is permissible or enforceable.

That said, while the defendants argue that the claims asserted by the Class involve rate-making only which should be determined by the IURC in accordance with the statutes governing the same,[3] it is apparent to us that many of the claims asserted in the complaint involve much more than mere rate-making. Appellant's App. p. 13–21. Thus, we agree with the IURC's determination in *Sims* that it should not interfere with the contract that was executed here because such would "undermine the ability of the DOC to regulate and supervise the provision of telephone services to inmates at correctional facilities." Slip op. p. 15. Rather, as was recognized by our supreme court in *Austin Lakes*, the resolution of this case should not rest solely with the IURC because several of the issues raised by the Class in its complaint involve common law claims regarding the reasonableness and enforceability of the contracts at issue. Put another way, the Class is seeking a remedy at common law that has resulted from discrimination by a utility.

Allowing claims to proceed in our courts like those presented here was recognized in *Foltz v. City of Indianapolis*, 234 Ind. 656, 130 N.E.2d 650 (Ind.1955), where our supreme court recognized that "[u]pon the dedication of a business to a public use, it is established that such business is under a common law duty to serve all who apply so long as facilities are available, without discrimination." *Id.* at 656. *Foltz* involved an action against the city of Indianapolis and others to obtain a judgment declaring that certain acts involving the condemnation of property, leasing property and the proposal to issue bonds under an off-street parking act were illegal. One of the questions that had to be decided was whether the Indianapolis Off–Street Parking Commission exercised its power in a reasonable fashion to provide adequate safeguards to assure a dedication of certain property to the public use intended. *Id.* at 660.

The *Foltz* court noted that such an obligation to serve "is without discrimination, not only as to service, but also as to person, and prices charged.... The duty to serve could be nullified if there were not the attendant duty also to serve at a reasonable charge. If a business 'affected with a public interest' could make exorbitant charges for its services, it could thereby serve only whom it saw fit, and when it saw fit, by manipulating its charges and

---

**3.** The defendants point to Indiana Code section 8–1–2–38 for the proposition that this case should rest with the exclusive jurisdiction of the IURC:

Every public utility shall file with the commission, within a time fixed by the commission, schedules, which shall be open to public inspection, showing all rates, tolls and charges which it has established and which are enforced at the time for any service performed by it within the state, or for any service in connection therewith, or performed by any public utility controlled or operated by it. The rates, tolls and charges shown on such schedules shall not exceed, without the consent of the commission, the rates, tolls and charges in force January 1, 1913.

prices." *Id.* Even more compelling, the *Foltz* court observed that "[a] consumer may sue to recover damages at common law resulting from discrimination by a utility as to services or rates. These are private rights that belong to the individuals constituting the public to whom the 'holding out' of the business is made." *Id.* at 657.

In reliance upon *Foltz,* it is apparent that the trial court may—and should—exercise its jurisdiction in this matter with respect to the common law claims that the Class has asserted, with the understanding that the threshold issue of whether the Sheriff is entitled to reap a benefit from the contracts at issue must be decided at the outset. Only then might the IURC invoke jurisdiction and determine the reasonableness of the rates that this "captive audience" is charged for telephone service.

Thus, we are compelled to remand this case to the trial court so that the parties may litigate the issue of whether the Sheriff and the State are permitted to enter into the contracts with Ameritech and AT & T. In the event that it is determined that there is no authority for the Sheriff or the State to reap a margin under the arrangement here, then the trial court must fashion a remedy for the Class. On the other hand, if the trial court determines that such a practice is permissible, it can then determine the reasonableness of the rates and to what extent the profit or margin generated is permissible, or it may refer the matter to the IURC in accordance with *Austin Lakes* for such a determination.

### CONCLUSION

In light of the issues discussed above, we conclude that the trial court erred in granting the Defendants' motion to dismiss for lack of subject matter jurisdiction. In sum, the trial court must exercise its jurisdiction and determine whether the authority exists that would permit the Sheriff and the State to enter into the contracts with Ameritech and AT & T and to reap a profit in accordance with those agreements. Moreover, we agree with the IURC's pronouncement in *Sims* that it should not interfere with the contracts here, inasmuch as deference should be given to the DOC to restrict the telephone privileges of inmates. However, should it be found that the State and the Sheriff are entitled to reap profits in accordance with the contracts, the trial court may determine the reasonableness of the rates and profits, or it may refer the cause to the IURC for such a determination.

The judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.[4]

BROOK, C.J. and SHARPNACK, J., concur.

---

**4.** Inasmuch as we are reversing on this issue, we need not address the Class' contention that the "filed rate" or "filed tariff" doctrine should not apply in these circumstances.