Chanelle Linet ALEXANDER, et al., Appellant–Plaintiff,

v.

The MARION COUNTY SHERIFF and The Commissioner of the Indiana Department of Administration, Appellee–Defendant.

No. 49A02–0708–CV–716.

Court of Appeals of Indiana.

July 29, 2008.

Rehearing Denied Sept. 22, 2008.

Lawrence M. Reuben, Richard A. Waples, Stephen Laudig, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Elizabeth Rogers, David L. Steiner, Deputies Attorney General, Indianapolis, IN, for Commissioner of the Indiana Department of Administration.

Kevin C. Schiferl, Julia Blackwell Gelinas, Melanie D. Margolin, Locke Reynolds LLP, Indianapolis, IN, for Marion County Sheriff.

**OPINION**

FRIEDLANDER, Judge.

Chanelle Linet Alexander, et al. (the Class) are persons (i.e., family members, friends, and attorneys) who have been charged and/or have paid for collect telephone calls from inmates of the Marion County jail and those incarcerated in Indiana Department of Correction (IDOC) facilities. This case was first brought to this court following the trial court's dismissal of the Class's complaint for lack of subject matter jurisdiction.[1] *Alexander v.*

1. On June 16, 2000, the Class filed its complaint against the Marion County Sheriff and

*Cottey,* 801 N.E.2d 651 (Ind.Ct.App.2004) (*Alexander I* ), *reh'g denied, opinion clarified,* 806 N.E.2d 315 (Ind.Ct.App.2004) (*Alexander II* ). Concluding that the trial court should exercise jurisdiction, this court remanded the case to the trial court for a determination of (1) whether the Marion County Sheriff (the "Sheriff") and the Commissioner of the Indiana Department of Administration (the "State")[2] (collectively, the "Appellees") were permitted to enter into their respective contracts with Ameritech and AT & T (and subsequently T–Netix) and, if so, (2) whether the rates charged for collect calls from the Marion County jail or IDOC facilities were reasonable. *Alexander I.*[3]

On remand, the trial court decided these issues in favor of the Sheriff and the IDOA and thus granted the Appellees' respective motions for summary judgment. The Class now appeals, presenting three issues for review, which we consolidate and restate as the following two:

1. Did the trial court err in determining that the Appellees had the authority to enter into contracts to provide telephone service to the Marion County jail and IDOC facilities that called for service providers to pay commissions in accordance with the respective contracts?

2. Did the trial court properly determine that the telephone rates charged by the phone companies to recipients of collect telephone calls from the Marion County jail and IDOC inmates are reasonable?

We affirm.[4]

In a nutshell, this case concerns the authority of the Sheriff and the IDOA to enter into contracts that provide for the Sheriff and the State to receive commissions from telephone service providers. Below is a summary of the contract terms pertinent to the issues on review.

On September 26, 1995, the Sheriff entered into a renewable two-year contract

the Commission of the Indiana Department of Administration (IDOA) seeking damages due to harm allegedly suffered as a result of the contracts entered into separately by the Sheriff and the IDOA with telephone companies for the provision of collect telephone service for inmates of the Marion County jail and the IDOC, respectively. In its complaint, the Class presented claims for breach of the common law duty of reasonableness owed to the plaintiffs, the unauthorized taxing of a sum of money, the unauthorized imposition of a licensing fee, unreasonable and unjust rate or service charge, unjust enrichment, money had and received, the combination to restrain and carry out restrictions on trade, and a combination to increase price.

2. The IDOA is the contracting agency involved in this action against the State. In most instances, the terms IDOA and the State are interchangeable. For purposes of this opinion, we will refer to the State, except when it is necessary for purposes of clarity to refer specifically to the IDOA as the contracting agency.

3. Specifically, this court concluded:

Thus, we are compelled to remand this case to the trial court so that the parties may litigate the issue of whether the Sheriff and the State are permitted to enter into the contracts with Ameritech and AT & T. In the event that it is determined that there is no authority for the Sheriff or the State to reap a margin under the arrangement here, then the trial court must fashion a remedy for the Class. On the other hand, if the trial court determines that such a practice is permissible, it can then determine the reasonableness of the rates and to what extent the profit or margin generated is permissible, or it may refer the matter to the IURC in accordance with *Austin Lakes [Joint Venture v. Avon Utilities, Inc.,* 648 N.E.2d 641 (Ind.1995) ] for such a determination.

*Alexander I,* 801 N.E.2d at 661.

4. This court heard oral argument in Indianapolis on May 21, 2008. We commend counsel for the quality of their presentations.

with Ameritech[5] to provide telephone service to inmates housed in the Marion County jail. Under the terms of the contract, the Sheriff agreed to provide Ameritech with space to install and maintain telephone equipment at the county jail and other county detention centers. The contract obligated Ameritech to provide, maintain, and be responsible for the operation of "no less than 222 inmate telephones" at no cost to the Sheriff. *Appellants' Appendix* at 204. The agreement further provided that Ameritech would compensate the Sheriff "[a] guaranteed rate of 40% of the total gross Ameritech (local and intraLATA) revenue from all inmate phone calls" plus a signing bonus of $524,000.00, payable in two annual installments of $262,000.00. *Id.* Such payments were to be made to the Marion County Jail Commissary Trust. The Sheriff's contract did not address the type of telephone service that would be provided or the rates Ameritech would charge for calls made from the phone equipment it installed and maintained, thus leaving those decisions to Ameritech.

The IDOA contracted with several different telephone service companies to provide telephone service to inmates at IDOC facilities. Specifically, the IDOA initially contracted with AT & T, and it is this contract that is the focus of the Class. The relevant contract with AT & T provided that AT & T was to provide the State with a 53% commission based on billed revenues generated from calls made from all of the State's payphones, including those in IDOC facilities, at state highway rest stops, and in state-owned buildings, inns, and hotel rooms.

After the AT & T contract expired, the IDOA contracted with T–Netix to provide telephone service for IDOC facilities. With regard to commissions, the contract with T–Netix provided that T–Netix would provide the State with a 50% commission for calls from public payphones and a 35% commission on inmate calls. The State's contracts required the service providers to file their tariffs with the appropriate regulatory agency and, also, that the rates charged be equal to or less than the dominant carrier's tariff rates with no surcharges.

Following remand in *Alexander I,* the trial court certified the case as a class action on December 28, 2004, defining the class as "all persons who, within two years prior to the filing of the Complaint, have been charged and/or have paid for collect calls from persons in the custody of the Marion County Sheriff o[r] the State of Indiana". *Id.* at 113. The Class is divided into two subclasses: Sub–Class A consists of all class members who were charged and/or paid for collect calls from persons in the custody of the State of Indiana and Sub–Class B consists of all class members who were charged and/or paid for collect calls from persons in the custody of the Sheriff.[6]

On October 3, 2005, the Sheriff filed its motion for summary judgment. The State filed its motion for summary judgment on March 3, 2006. On May 8, 2006, the Class filed its cross-motion for summary judgment. Both the Sheriff and the State filed motions to strike portions of the evidentiary materials submitted by the Class in support of its cross-motion for summary judgment. The trial court held a hearing on the respective motions to strike on Jan-

---

5. By way of amendments, the term was ultimately extended.

6. The Class originally sought to certify a class as to all Indiana sheriffs, but voluntarily withdrew its request, leaving only its complaint against the Marion County Sheriff.

uary 19, 2007. On February 20, 2007, the court entered an order partially granting the motions to strike.

On February 26, 2007, the trial court heard argument on the pending motions for summary judgment. The trial court entered its Final Order of Summary Judgment on July 24, 2007, granting summary judgment in favor of the Sheriff and the State and denying the Class's cross-motion for summary judgment. Specifically, the court determined the issues set out by this court, concluding that in contracting with telephone service providers, the Appellees "acted under the authority granted to them respectively to operate and maintain the Marion County Jail and the Indiana State Department of Corrections [sic] facilities...." *Id.* at 34. The court further found that "the rates for telephone service contracted for by the [Appellees] were both reasonable and appropriate". *Id.* at 35. The Class filed its notice of appeal on August 21, 2007.

■■■■ "The trial court's grant of summary judgment is clothed with a presumption of validity and the appellant bears the burden of proving that the trial court erred." *Bamberger & Feibleman v. Indianapolis Power & Light Co.,* 665 N.E.2d 933, 936 (Ind.Ct.App.1996). Our review of a grant of summary judgment is governed by the following standard:

> On review of a trial court's decision to grant or deny summary judgment, we apply the same standard as the trial court: we must decide whether there is a genuine issue of material fact that precludes summary judgment and whether the moving party is entitled to a judgment as a matter of law. Once the moving party has sustained its initial burden of proving the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law, the party opposing summary

judgment must respond by designating specific facts establishing a genuine issue for trial. We may consider only those portions of the pleadings, depositions, and any other matters specifically designated to the trial court by the parties for purposes of the motion for summary judgment. Any doubt as to the existence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the nonmoving party. Although the nonmovant has the burden of demonstrating that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that the nonmovant was not improperly denied his or her day in court.

*City of Mishawaka v. Kvale,* 810 N.E.2d 1129, 1132–33 (Ind.Ct.App.2004) (citations omitted). The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which can be determined as a matter of law. *Bamberger & Feibleman v. Indianapolis Power & Light Co.,* 665 N.E.2d 933. The fact that the parties filed cross-motions for summary judgment does not affect our standard of review. *S.E. Johnson Cos., Inc. v. N. Indiana Pub. Serv. Co.,* 852 N.E.2d 1 (Ind.Ct.App.2006). In such case we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.*

1.

The threshold issue as set forth by this court in *Alexander I* is whether the Sheriff and the State were permitted to enter into contracts with telephone service providers that provided for commissions and other forms of compensation to be paid by the telephone service providers to the Sheriff and State respectively. In granting summary judgment, the trial court decided this issue in favor of the Appellees, concluding

that the Appellees "acted under the authority granted to them respectively to operate and maintain the Marion County Jail and the Indiana State Department of Corrections [sic] facilities...." *Appellants' Appendix* at 34.

We begin by noting that the Sheriff is charged with the care of prisoners confined in the county jail. Ind.Code Ann. § 36–2–13–5(a)(7) (West, PREMISE through 2007 1st Regular Sess.). In order to carry out this function, the Sheriff must provide a safe and secure manner for jail inmates to make phone calls. The parties do not dispute that implicit in this charge is that the Sheriff has the authority, and in fact, the duty, to enter into contracts to carry out this function.

The IDOA is a state agency created by statute and has the implicit authority to act on behalf of the State. Indeed, the IDOA has been given the exclusive authority to "supervise and regulate the making of contracts by state agencies". Ind.Code Ann. § 4–13–1–4(2) (West, PREMISE through 2007 1st Regular Sess.). The IDOA is specifically granted the authority to act as the purchasing agent for all agencies of the executive branch and to purchase or supervise the purchase of all services for such state agencies. I.C. § 4–13–1.3–3 (West, PREMISE through 2007 1st Regular Sess.); Ind.Code Ann. § 5–22–4–1 (West, PREMISE through 2007 1st Regular Sess.). The IDOA has the statutory authority to purchase services using any procedure it deems appropriate. I.C. §§ 5–22–2–25; 5–22–6–1 (West, PREMISE through 2007 1st Regular Sess.). As the IDOC is part of the executive branch, *see* Ind.Code Ann. § 11–8–2–1 (West, PREMISE through 2007 1st Regular Sess.), the IDOA is vested with the power to procure services, such as the telephone services at issue in this case, on behalf of the IDOC.

On appeal, the Class does not dispute that the Sheriff and the State had the authority to contract for the provision of telephone services for inmates of their respective facilities. Rather, the Class argues that the Sheriff and the State, respectively, did not have the authority to enter into contracts that provide for the Sheriff and the State to "reap a benefit" in the form of commission payments from the contracts with telephone service providers. *Appellants' Brief* at 1. The Class asserts, in summary fashion, that the Sheriff's and the State's authority to enter into contracts by which they will "reap a benefit" is constrained by statutory prohibitions against excessive license fees, *see* Ind.Code Ann. § 36–1–3–8(5) (West, PREMISE through 2007 1st Regular Sess.), unreasonable user fees, *see* I.C. § 36–1–3–8(6), unauthorized taxes, *see* Ind.Code Ann. §§ 5–7–2–1 *et seq.* (West, PREMISE through 2007 1st Regular Sess.), and combinations in restraint of trade, *see* Ind.Code Ann. § 24–1–2–1 *et seq.* (West, PREMISE through 2007 1st Regular Sess.). We address each of these assertions in turn.

The Class argues that the monies received by the Sheriff per the terms of the contract with Ameritech constitute an unreasonable license fee. *See* I.C. § 36–1–3–8(a)(5).[7] Under that statute, the Sheriff, as a "unit" of local government "does not have ... [t]he power to impose a license fee greater than that reasonably related to the administrative cost of exercising a regulatory power". *Id.*

We find the Supreme Court case of *Schloss v. City of Indianapolis*, 553

---

7. Title 36 applies to local government and local governmental officials. It is not applicable to claims made against the State.

N.E.2d 1204 (Ind.1990), instructive. In *Schloss,* the City of Indianapolis granted cable television franchises to private companies pursuant to applicable ordinances. Per the terms of the contracts with the City, the private cable companies paid to the City an annual franchise fee equal to three percent of gross accrued revenues from cable television operations. This fee was in turn passed on to cable television subscribers as part of their cost of cable television service. Schloss challenged the fee arguing that it exceeded the amount the City could collect under I.C. § 36–1–3–8(a)(5), concerning license fees, because the amount collected was greater than the cost of regulating the franchise.

■ Our Supreme Court considered the nature of the franchise fee and concluded that it was not a license fee subject to the limitation found in I.C. § 36–1–3–8(a)(5). In so concluding, the Court consulted a hornbook definition of a license, noting that a license is "[a] permit granted by an appropriate governmental body, generally for consideration, to a person, firm, or corporation to pursue some occupation or to carry on some business subject to regulation under the police power. A license is not a contract between the state and the licensee, but is a mere personal permit." *Schloss v. City of Indianapolis,* 553 N.E.2d at 1207 (quoting Black's Law Dictionary 829 (5th ed. 1979)). A license fee is thus the consideration given for the receipt of the permit/license. Examples of licenses to engage in various business activities include permits to operate taxicabs or a vendor license to sell beverages, flowers, and foods from carts. The Court found that the challenged franchise fees were "quite different" from these licenses, and upheld the City's right to accept a

franchise fee under the City's power to enter into contracts with companies. *Id.*

■ As in *Schloss,* we conclude that the payments collected by the Sheriff from Ameritech did not constitute a license fee. The Sheriff was not granting a permit to Ameritech to provide telephone services. Rather, the Sheriff entered into a bilateral contract with Ameritech in which the Sheriff granted Ameritech the right to provide telephone service to inmates of the county jail and in exchange, Ameritech agreed to pay commissions and an annual signing bonus to the Sheriff. Because the monies received by the Sheriff are not license fees, I.C. § 36–1–3–8(5) is inapplicable and did not constrain the Sheriff's authority to receive such monies in accordance with the terms of its contract with Ameritech.

■ The Class also argues that the monies received by the Sheriff constitute an unreasonable user fee. *See* I.C. § 36–1–3–8(a)(6).[8] Pursuant to subsection (6), "a unit does not have ... [t]he power to impose a service charge or user fee greater than that reasonably related to reasonable and just rates and charges for services." Again, we note that the payment of commissions was a negotiated term of a voluntary, bilateral contract between the Sheriff and Ameritech. Ameritech charged Class members a specified rate and in turn, agreed to pay a commission to the Sheriff. The commission paid by Ameritech is a voluntary payment, not a user fee imposed upon the Class.

■ We also reject the notion that by receiving a commission the Sheriff or the State are levying or receiving an improper tax. "A tax is compulsory and not optional; it entitles the taxpayer to receive noth-

---

8. As noted above, Title 36 applies to local government. This statute, therefore, applies only to the Class's claim against the Sheriff and is not asserted in support of its claim against the State.

ing in return, other than the rights of government which are enjoyed by all citizens." *City of Gary v. Indiana Bell Tel. Co., Inc.*, 732 N.E.2d 149, 156 (Ind.2000) (*quoting Ennis v. State Highway Comm'n*, 231 Ind. 311, 108 N.E.2d 687, 693 (1952)). "The revenue-based aspect of the fee does not ipso facto transform it into a tax." *Id.*

Here, Ameritech voluntarily entered into the contract with the Sheriff to provide phone service to the county jail. In exchange for such opportunity, Ameritech agreed to pay a commission to the Sheriff based on a percentage of the revenues generated from the rates Ameritech charged to Class members for the service provided. The Sheriff did not charge anything to the Class. In fact, the Sheriff did not specify the type of telephone service to be provided, nor did the Sheriff specify the rate to be charged. These decisions were left to Ameritech, subject to IURC approval. It was Ameritech that charged Class members a fee for the service provided.

The same holds true for the State's contract with AT & T. During the request for proposal process, AT & T tendered its proposed contract terms including two options concerning commission rates from which the State was to choose. AT & T pursued the opportunity to provide phone service to the State and voluntarily agreed to pay a 53% commission based on billed revenues generated from the rates charged by AT & T for the service provided.

In each case, the telephone service providers charged the Class members a fee for the services provided. In turn, the service providers paid a commission to the Sheriff and the State. In exchange for such payments, Ameritech and AT & T were granted the exclusive rights for the term of their respective contracts to provide phone service to the county jail and IDOC facilities. The commissions to be

paid to the Sheriff and the State by their telephone service providers are voluntary payments in accordance with negotiated contract terms. They do not constitute compulsory taxes imposed upon the Class.

■ Finally, the Class makes several claims challenging the contracts as vehicles in restraint of trade. The Class asserts that the Sheriff and the State "unilaterally created and continued to maintain its own monopoly" and in furtherance thereof, granted exclusive contracts to phone companies to provide services to the county jail and IDOC facilities, respectively. The Class refers to the contracts as evidence of monopolistic and anticompetitive behavior.

■ We understand the Class's argument to be that by contracting with and granting exclusive rights to identified telephone service providers, the Appellees restrict competition within their respective facilities, which the Class contends could lead to lower rates. We begin by noting that the contracts between the Appellees and their respective phone service providers are not contracts creating monopolies. Such would be the case if the phone companies were acting in concert to establish a certain pricing level within the market. The contracts here were entered into following a request for proposal process, and the Appellees were free to choose providers and negotiate contract terms that met their needs. In this same vein, we have before recognized the special and complex nature of maintaining jail and IDOC facilities. Indeed, the Appellees point out the numerous security and safety measures that are a necessary part of providing phone service to inmates of their respective facilities. Courts are ill equipped to deal with these types of problems relating to prison administration. *See Kimrey v. Donahue*, 861 N.E.2d 379 (Ind.Ct.App. 2007), *trans. denied; Hasty v. Broglin*, 531

N.E.2d 200 (Ind.1988); *Blackmon v. Duckworth*, 675 N.E.2d 349 (Ind.Ct.App.1996). The Sheriff's and the State's decisions to contract with and grant exclusive rights to only one telephone service provider is a matter within their authority to operate and maintain their respective facilities.

The parties also point out that since this action was initiated in June 2000, the legislature passed I.C. §§ 5–22–23–1 *et seq.*, with an emergency effective date of March 20, 2002. The Class contends that in enacting such statutes, the legislature "provided, for the first time under Indiana law, [for] the payment of commissions from telephone companies providing the service to the governmental entity contracting for the service." *Appellants' Brief* at 5. The Appellees respond that the newly enacted statutes "do not presume to newly authorize any conduct", but instead, impose new guidelines and limits on the collection and use of such commissions. *Appellees' Brief* at 14.

We agree with the Appellees that these statutes presuppose the existing authority of the State and county sheriffs to enter into contracts and collect payment in the form of commissions. There is no language in the statutes that purports to newly authorize the receipt of commissions from telephone service providers. Indeed, it is apparent from the statutory language that the legislature merely intended to ratify such authority subject to newly imposed guidelines and limits.[9] Specifically, I.C. § 5–22–23–5 provides that the State, in its solicitations for a telephone calling system, must state the goal of reducing the total cost of a telephone call placed by a confined offender by soliciting competitive proposals that emphasize lower per call service charges, per minute rates, and commission rates.[10] The same goal is mandated for the contracts entered into by the Sheriff.[11] In providing that new solicitations must "emphasize lower ... commission rates" the legislature presupposed the authority of the State and the Sheriff to receive commissions. I.C. § 5–22–23–5(b)(2)(C).

Finding no statutory constraints on the Sheriff's or the State's authority to enter into contracts that call for the service pro-

---

**9.** Indeed, this court noted in *Alexander II*, "the promulgation of these statutes is geared toward the lowering of the telephone call costs to inmates and likewise limits the county sheriffs' telephone contracts to the Department of Correction rates". 806 N.E.2d at 317.

**10.** Specifically, I.C. § 5–22–23–5 provides:

(b) Notwithstanding any other law, the solicitation [by the State] must include a statement concerning the following:

\* \* \*

(2) The goal of reducing the total cost of a telephone call placed by a confined offender by soliciting competitive proposals that emphasize lower:

(A) per call service charges;

(B) per minute rates; and

(C) commission rates.

**11.** I.C. § 5–22–23–6(b) (West, PREMISE through 2007 1st Regular Sess.) relating to solicitation by a purchasing agent, including an agent for a county jail, states:

[A] solicitation by a purchasing agent:

(1) must include any security and fraud control services considered necessary by the purchasing agency, including the use of collect calling services as the sole means of confined offender communications with the general population; and

(2) may not solicit:

(A) a per call service charge;

(B) a per minute rate; or

(C) a commission rate;

that exceeds the terms of a contract between the state and a telecommunications provider for the same service under the most recent solicitation submitted by the department under this article.

We note that in December 2005, the Sheriff entered into a new telephone services contract with Evercom Systems, Inc. under the new statutory provisions.

viders to pay commissions to the Sheriff and the State in accordance with their respective contracts, and in light of the General Assembly's recognition of the Sheriff's and the State's authority to accept commissions from telephone service providers, we conclude that the trial court properly decided the threshold issue, i.e., the Sheriff and the State had the authority to enter into contracts which provided that they would receive commissions from providers of telephone services to their respective facilities.

2.

The Class argues the trial court improperly determined that the rates charged by the telephone service providers were reasonable. The Class maintains that the trial court's determination in this regard goes against the well-established standard for summary judgment.

Probative of the reasonableness of the rates charged is evidence designated by the Sheriff and the State that revealed the rates charged by Ameritech for inmate collect calls is less than or roughly equal to those for comparable collect calls from a public payphone serviced by leading companies in the telecom industry. For a collect call initiated by an inmate, SBC's (formerly Ameritech) filed rate is $3.00 per call plus $0.39 per minute. In comparison, for a collect call from a public payphone, AT & T's filed rate is $5.99 to $7.50 per call plus $1.15 per minute, plus a $0.56 per call public payphone surcharge. MCI's filed rate for a collect call from a public payphone is $3.15 to $3.85 per call plus $0.10 to $0.31 per minute. Sprint's filed rate for a collect call from a public payphone is $4.90 to $5.50 per call plus $0.89 per minute. The rates charged by AT & T for collect calls by IDOC inmates included a $3.00 set-up charge plus a $.059 per minute transport charge. These rates are lower than AT & T's rates for traditional automated collect calls. Indeed, in its brief, the Class concedes that the evidence designated to the trial court for purposes of summary judgment "showed that the actual rates paid by class members were no more than the rates paid by members of the general public who made operator assisted collect calls from payphones in public places". *Appellants' Brief* at 5.

With their designated evidence, the Sheriff and the State met their initial burden of demonstrating that the rates charged to inmates of the county jail and IDOC facilities were reasonable inasmuch as they were no more than, and in some cases less than, the rates charged to the public for a similar service. Under the summary judgment standard, the burden shifted to the Class to designate specific facts establishing a genuine issue for trial. The Class responds that it is unreasonable to compare the rates of operator-assisted collect calls from the county jail or IDOC facilities with rates charged on public pay phones. The Class argues that it would be more appropriate to compare rates charged in the Appellees' institutions "with rates in similar institutions in similar states". *Id.* at 19. Aside from making such assertion, the Class failed to designate any specific evidence from which such comparison could be made.

The Class also asserts that its evidence "demonstrated that the rates that would have been paid by members of the Plaintiff Classes would have been lower had the commissions and bonuses contained in the State's and the Sheriff's contracts with the telephone companies been lower or nonexistent". *Id.* at 5. In support of such assertion, the Class fails to cite to any designated evidence in the record, but rather cites only to its brief in support of its motion for summary judgment wherein it made the same claim. The Class has wholly failed to demonstrate that the rates

charged would have been lower had the at-issue contracts not contained provisions for the payment of commissions to the Sheriff and the State.

The Class continues, directing us to the stricken affidavits of Celia Sweet, Dr. Creasie Finney Hairston, Steven Jackson (with attached article), and Fran Quigley.[12] The Class maintains that the trial court abused its discretion in striking this evidence and asserts that these affidavits established a genuine issue of material fact regarding the reasonableness of the rates charged, which is a consideration underlying the Class's claims for breach of common law duty of reasonableness (Count I), unjust enrichment (Count V), and money had and received (Count VI).

We need not delve into the issue of admissibility of the affidavits and the trial court's ruling thereon because even assuming their admissibility, the disputed affidavits fail to establish a genuine issue of fact with regard to the reasonableness of the challenged rates. Indeed, the gist of these affidavits concerns the impact of incarceration on telephone communication between inmates and their families, friends, and attorneys.[13] The information contained in the affidavits, however, is not specific to rates charged to inmates housed in the Marion County jail or IDOC facilities. The affidavits are therefore not probative of the reasonableness of the rates charged in this case.

Indeed, it goes without saying that incarceration imposes hardships on inmates and their ability to maintain communication with family members throughout their period of incarceration. Further, we do not discount the critical role communication with family and friends plays in the lives of inmates in terms of rehabilitation, lower recidivism rates, successful reentry into society, and maintaining family cohesion. This does not, however, lead to the conclusion that the rates charged in the instant case are unreasonable.

Having reviewed the record, and even considering the affidavits stricken by the trial court, we conclude the Class failed to meet its burden of establishing that there is a genuine issue of fact with regard to the reasonableness of the rates charged. The Sheriff and the State, respectively, negotiated and entered into bi-lateral contracts with telephone service providers in which the service providers voluntarily agreed to pay commissions in accordance with contract terms. Based upon the undisputed, designated evidence, the challenged rates were reasonable.

Judgment Affirmed.

ROBB, J., and MATHIAS, J., concur.

12. The Sheriff moved to strike these affidavits as irrelevant, incompetent, or based on hearsay. The trial court granted the Sheriff's motion to strike. The State likewise objected to the affidavits, but its objection was apparently overruled.

13. Here, we cite a couple of examples. The Class asserts that Sweet's perceptions of members of the Plaintiff classes "are that the rates have a devastating effect on the Plaintiffs in terms of human suffering" and that

such evidence "could lead to the conclusion that this human suffering is caused by the [Appellees'] voluntary, unilateral, monopolistic actions of contracting for high rates". *Appellants' Brief* at 21. The Class maintains that Dean Hairston's affidavit is pertinent to the issue of reasonableness of the rates charged and the "easily foreseen dire consequences of the Sheriff's self-centered pricing on the Plaintiff Classes." *Id.* at 23.