

I N  T H E

# Indiana Supreme Court



**FILED**
May 30 2024, 11:37 am
**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

Supreme Court Case No. 23S-PL-130

## Duke Energy Indiana, LLC,
*Appellant,*

–v–

## City of Noblesville, Indiana,
*Appellee.*

Argued: September 21, 2023 | Decided: May 30, 2024

Appeal from the Hamilton Superior Court
No. 29D01-2009-PL-6389
The Honorable Michael A. Casati, Special Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 21A-PL-1563

**Opinion by Justice Slaughter**

Chief Justice Rush and Justices Massa, Goff, and Molter concur.

**Slaughter, Justice.**

This case pits a municipality's power to protect the health and safety of its residents against the utility regulatory commission's power to impose uniform, statewide standards on regulated public utilities. Our state utility code does not automatically preempt local ordinances that a municipality may want to enforce against a public utility. But the code sweeps broadly and subjects even generally applicable ordinances to the commission's regulatory oversight to the extent they are "affecting or relating to the service of any public utility"—a phrase under the code with far-reaching scope. Both trial courts and the commission can hear a municipality's action to enforce an ordinance. But only the commission can decide whether an ordinance implicating a public-utility function is unreasonable. We reverse and remand.

I

A

Duke Energy is a regulated electric utility under the jurisdiction of the Indiana Utility Regulatory Commission. In 2020, to meet increased customer demand, Duke opted to build new facilities in Noblesville, Indiana, an affluent and growing community in central Indiana, just north of Indianapolis. Duke bought land in Noblesville for a new substation, more transmission lines, and a new garage. The new garage will include parking space for maintenance and other vehicles, a connecting office, and other "related improvements" like a kitchen, shower, and bathrooms. On Duke's land sat an abandoned house and garage, both of which Duke had to demolish before building its new facilities.

"[A]s a courtesy", according to Duke, it notified Noblesville in mid-2020 that it would soon begin demolishing the two abandoned structures before building its new facilities. In response, Noblesville insisted that Duke comply with its unified development ordinance before demolishing the house and garage. Noblesville said Duke would need multiple permits under article 4 of the ordinance: a demolition permit under 4(F)(4), and either an improvement-location permit under 4(F)(1) or a building permit

under 4(F)(2). Duke declined to obtain the permits because, it claimed, Noblesville has no power to regulate a public utility's service-related projects through local permitting requirements. Without obtaining any permits, Duke began demolition.

B

Noblesville took two steps in quick succession to enforce its ordinance against Duke. First, it issued a stop-work order, which Duke obeyed. Then it sued Duke in the Hamilton Circuit Court seeking declaratory and injunctive relief to enforce its ordinance. Noblesville sought an order requiring Duke to obtain a demolition permit and, for any "non-substation improvements", either an improvement-location or building permit. The city also sought attorneys' fees, costs, and penalties. Duke counterclaimed, arguing that Noblesville "lacks jurisdiction and authority to seek to regulate the activities of [Duke]" on the project.

The parties cross-moved for summary judgment. Duke argued the ordinances do not apply to it because the commission has "sole and exclusive authority and jurisdiction" to enforce ordinances against public utilities. Noblesville countered that its ordinances are "generally applicable" to anyone within its boundaries and do not target public utilities generally or their utility functions specifically. Thus, Noblesville maintained, it can enforce its ordinances in the trial court, and Duke must obtain the required permits to demolish the existing structures as a prelude to building its new facilities. Also, the parties agreed to have a special judge oversee their dispute, prompting the Hamilton Circuit Court to transfer this case to The Honorable Michael Casati of the Hamilton Superior Court.

The trial court found for Noblesville and ordered Duke to comply with the ordinance and obtain the permits. The court imposed a $150,000 penalty against Duke for starting demolition without required permits. And it awarded Noblesville $115,679.10 in attorneys' fees, expert fees, and costs.

The court of appeals affirmed. In a precedential opinion, the panel held that the trial court has jurisdiction, and it upheld both the summary-judgment order, including the penalty, and the order on fees and costs. *Duke Energy Ind., LLC v. City of Noblesville*, 200 N.E.3d 935 (Ind. Ct. App. 2022). As to jurisdiction, the panel held that neither Duke's demolition of old structures nor its construction of the new garage and office building involves utility service or the location of new utility facilities. *Id.* at 940. Thus, the panel concluded, Duke's demolition and construction projects "do not fall within the [commission's] exclusive domain, leaving the trial court with authority to resolve this dispute and enforce [Noblesville's ordinance] against Duke". *Id.* at 940–41. The panel remanded so the trial court can consider whether to award Noblesville's attorneys' fees on appeal. *Id.* at 948.

Duke then sought transfer, which we granted, 209 N.E.3d 1181 (Ind. 2023), thus vacating the appellate opinion, Ind. Appellate Rule 58(A).

II

We hold that the trial court has jurisdiction over Noblesville's enforcement action against Duke. But only the commission can decide whether Noblesville's ordinance interferes unreasonably with Duke's utility functions. The commission "has both the fact-finding expertise and the broader non-local focus necessary to balance [the] competing interests" of public utilities and municipalities in deciding such disputes. *Duke Energy Ind., LLC v. Town of Avon*, 82 N.E.3d 319, 325 (Ind. Ct. App. 2017). Under our doctrine of primary jurisdiction, the trial court must refer the reasonableness question to the commission.

First, we explain that municipal ordinances presumptively apply to regulated public utilities. Thus, Duke's blanket assertion that Noblesville has no power to enforce its ordinance against Duke is unfounded. Next, we explain that both the commission and trial court can hear ordinance-enforcement actions generally. But the utility code confers on the commission sole authority to decide whether a local ordinance "affecting or relating to" public-utility service goes too far. That means Noblesville can seek to enforce its ordinance against Duke in the trial court, but only

the commission can decide whether the ordinance interferes unreasonably with Duke's public-utility functions.

A

Municipalities hold general power to enforce their ordinances within their own boundaries, and that power extends to public utilities. But this power has limits. Limits on municipal regulation of public utilities go back more than a hundred years. Before 1913, municipalities could regulate all affairs within their borders, including public-utility service, and they often did so robustly. See *City of Vincennes v. Vincennes Traction Co.*, 120 N.E. 27, 29 (Ind. 1918). The result was a patchwork quilt of varying utility regulations from one community to the next.

This variegated regulatory terrain shifted in 1913 when the legislature passed the Shively-Spencer Act. 1913 Ind. Acts 167, 167–68. The 1913 Act reshaped our state's utility landscape by creating a uniform system for regulating utilities in place of the many separate municipal regulators that existed before. *Util. Ctr., Inc. v. City of Ft. Wayne*, 868 N.E.2d 453, 455–56 (Ind. 2007); *City of Huntington v. N. Ind. Power Co.*, 5 N.E.2d 889, 892 (Ind. 1937). And it established the Public Service Commission—the predecessor to today's commission—as "a fact-finding body with the technical expertise to administer the regulatory scheme devised by the legislature." *N. Ind. Pub. Serv. Co. v. U.S. Steel Corp.*, 907 N.E.2d 1012, 1015 (Ind. 2009). The commission thus enforces a comprehensive, statewide utility system in place of the prior, checkered system of utility regulation by localities.

The 1913 Act represented a noteworthy about-face in government regulation of public utilities in Indiana by "vest[ing] in the commission . . . all powers over public utilities theretofore vested in municipalities" minus those powers "expressly reserved to the municipalities." *Graham Farms, Inc. v. Indianapolis Power & Light Co.*, 233 N.E.2d 656, 667 (Ind. 1968) (citing *City of Vincennes*, 120 N.E. 27). The Act thus flipped the balance of power over utility regulation, depriving municipalities of such authority, and reflected the sentiment that "local regulation is inimical to that larger [statewide] interest." *Id.* at 666.

This reallocation of utility regulation to a lone state agency prevailed for nearly seventy years. But in 1980 the legislature enacted the Home Rule Act, which grants "units"—including municipalities like Noblesville—"all the powers that they need for the effective operation of government as to local affairs." I.C. §§ 36-1-2-23, 36-1-3-2. The 1980 Act also gave municipalities "all other powers necessary or desirable in the conduct of its affairs, even though not granted by statute." *Id*. § 36-1-3-4(b)(2).

The Act did not overrule Shively-Spencer but reversed the general presumption about what powers municipalities have. Before 1980 municipalities, like state agencies, had only those powers the legislature conferred expressly or by necessary implication. Beginning in 1980, though, municipalities acquired plenary powers to regulate in any area the legislature did not specifically withhold. Thus, municipalities could regulate their local affairs, unless the power to regulate was "expressly denied by the Indiana Constitution or by statute" or "expressly granted to another entity." *Id.* § 36-1-3-5(a)(1), (2). Relevant here, the 1980 Act withholds from municipalities the "power to regulate conduct that is regulated by a state agency, except as expressly granted by statute." *Id.* § 36-1-3-8(a)(7). In other words, municipalities can still regulate even public utilities, unless the utility code says otherwise.

The utility code does not preempt municipal regulation of public utilities wholesale. In fact, the code assumes the opposite—that local ordinances may still apply to public utilities. The commission is charged, after all, with investigating violations of, among other things, "the ordinances of any city or town by any public utility doing business therein" and shall "enforce this chapter [of the utility code] as well as all other laws, relating to public utilities." *Id.* § 8-1-2-115. We thus reject Duke's assertion that Noblesville cannot regulate Duke via local ordinance at all.

B

Having determined that state law does not automatically preempt local ordinances affecting public-utility service, we consider next whether

the utility code requires the commission to decide any disputed issues or claims here. Applying the code, we hold the trial court can hear Noblesville's enforcement action, but the action's merits turn in part on an issue—Duke's counterclaim—that only the commission can decide. Duke's demolition of the home and garage and its proposed construction of the new office building and garage involve utility "service"—a term the code defines expansively. These projects fall within the commission's sphere, and the commission has primary jurisdiction for deciding whether Noblesville's enforcement of its ordinance against Duke goes too far.

1

When assessing whether a trial court or administrative agency has jurisdiction, two doctrines may be at play: exhaustion of remedies and primary jurisdiction. Both doctrines require courts to honor the legislature's decision to vest authority in specialized agencies by deferring to those agencies all matters the legislature has placed within their expertise. That said, exhaustion of remedies and primary jurisdiction "are related but significantly different." *Austin Lakes Joint Venture v. Avon Utils., Inc.*, 648 N.E.2d 641, 645 (Ind. 1995) (emphasis omitted). Administrative exhaustion requires parties to bring specific **actions** to an agency before pursuing judicial remedies. *Id.* at 644–45. Exhaustion applies when a party challenges an agency ruling. A party aggrieved by such ruling must exhaust administrative remedies before obtaining judicial review of the ruling. I.C. § 4-21.5-3-7; *Austin Lakes*, 648 N.E.2d at 644. Until the party exhausts all such remedies, courts cannot "hear the case at all." *Austin Lakes*, 648 N.E.2d at 644.

The doctrine of primary jurisdiction, in contrast, applies when agencies and courts share jurisdiction over **actions**, but the legislature has reserved certain **issues** or **claims** for an agency. *Id.* at 645. Primary jurisdiction, in other words, requires a trial court to avoid answering technical questions that the legislature gave an agency the power to decide. "The doctrine [of primary jurisdiction] comes into play when a claim is cognizable in a court but adjudication of the claim 'requires the resolution of issues which, under a regulatory scheme, have been placed within the special

competence of [an] administrative body'". *Ibid.* (alteration in original) (quoting *Hansen v. Norfolk & W. Ry. Co.*, 689 F.2d 707, 710 (7th Cir. 1982) (in turn quoting *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956))). If resolution of a claim requires a determination within an agency's expertise, "the judicial process is suspended pending referral of such issues to the administrative body for its views." *Ibid.* The doctrine is born of the maxim that "in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created . . . for regulating the subject matter should not be passed over." *Ibid.* (quoting *Far E. Conf. v. United States*, 342 U.S. 570, 574 (1952)).

Put differently, if one or more issues are within the agency's exclusive authority, the trial court must refer at least those issues to the agency, which has primary jurisdiction over them. To "refer" an issue to an agency means the trial court instructs the affected party to "take the issue formally before the appropriate agency." *Id.* at 648 (citing *Reiter v. Cooper*, 507 U.S. 258, 268 n.3 (1993)). In practice, the court can do that in either of two ways.

First, it can dismiss the entire action and refer the parties to the agency. That is what we did in *Town Board of Orland v. Greenfield Mills, Inc.*, 663 N.E.2d 523, 524 (Ind. 1996). There, affected landowners sued in court challenging the town's decision to build a sewage-treatment facility in Steuben County. *Ibid.* The town needed a permit from the state's department of environmental management to build the facility. *Ibid.* But this permitting process would necessarily address the landowners' claims. *Id.* at 527. So we dismissed the action and referred the parties to the department. *Id.* at 528, 529.

Or, second, the court can refer only the agency-bound issues while retaining jurisdiction over the action. *Austin Lakes*, 648 N.E.2d at 646. Under this approach, the court can hold judicial proceedings in abeyance while the parties present the issues to the agency for a ruling. *Id.* at 645. And if the court has before it other issues that do not require the agency's determination, the court can retain the non-agency issues for itself, so long

as the court's resolution of its issues does not depend on how the agency resolves what the agency must decide. *Id.* at 646. Either way, the court must avoid addressing issues within the agency's exclusive authority.

Here, Noblesville seeks to enforce its unified development ordinance against Duke. But neither party challenges an agency's ruling, so this is not an exhaustion case. Duke, rather, has consistently objected to Noblesville's enforcement claim by citing the utility code and the commission's prerogative to decide whether Noblesville's ordinance oversteps its bounds. Thus, the question here is whether our primary-jurisdiction doctrine requires the trial court to refer either Noblesville's claim or Duke's counterclaim to the commission.

2

We hold that the commission must decide whether Noblesville's proposed enforcement of its disputed ordinance against Duke's demolition and construction projects interferes unreasonably with Duke's public-utility functions. To be sure, trial courts and the commission have concurrent authority to hear ordinance-enforcement actions generally. But the utility code's broad language grants only the commission the power to decide whether a municipal ordinance impedes a public utility's service unreasonably and thus goes too far. Under principles of primary jurisdiction, then, the trial court must refer at least Duke's counterclaim to the commission and may, in its discretion, refer the entire action, including Noblesville's claim.

a

Trial courts and the commission generally have concurrent authority to hear ordinance-enforcement disputes between municipalities and public utilities. Courts can hear such municipal-enforcement actions against a public utility under section 36-1-6-4, which authorizes a city to bring a civil action for an ordinance violation. A public utility that seeks to enjoin a municipality from demanding that the utility comply with a local ordinance can sue under the declaratory judgment act. I.C. § 34-14-1-8. The act permits any "corporation of any character whatsoever", *id.* § 34-

14-1-13, "whose rights, status, or other legal relations are affected by a . . . municipal ordinance", *id.* § 34-14-1-2, to bring a declaratory-judgment action challenging the ordinance.

Like the trial court, the commission also can resolve disputes between localities and public utilities. The utility code says the commission "shall inquire" into allegations that a public utility is violating "the ordinances of any city or town by any public utility doing business therein". *Id.* § 8-1-2-115. And the commission must "enforce this chapter [of the utility code], as well as all other laws, relating to public utilities." *Ibid.*

Here, either the trial court or the commission can decide Noblesville's claim against Duke because Noblesville, a municipality, is seeking to enforce its ordinance against Duke, a public utility. The trial court thus has discretion to give the agency primary jurisdiction over Noblesville's claim against Duke, or to decide the claim for itself. *Austin Lakes*, 648 N.E.2d at 647. The court elected to retain jurisdiction over Noblesville's claim, and we do not disturb its decision.

But that does not end our inquiry. Duke also brings a counterclaim, to which we turn next.

b

Duke counterclaims that Noblesville's ordinance is unenforceable because it impedes Duke's public-utility functions unreasonably. Noblesville, in contrast, argues the commission has no business deciding Duke's counterclaim because Noblesville's ordinance does not directly touch Duke's "utility service, utility facilities, or the location and use of such facilities." Thus, Noblesville argues, the trial court can enforce the city's ordinance against Duke without the commission's input. We hold that the utility code requires the commission to decide Duke's counterclaim. The code gives the commission expansive authority to decide whether a local ordinance improperly impedes a public utility's service. Given that clear grant of power premised on the commission's role as utility-expert-in-chief, only the commission—not the trial court— can decide whether a municipal ordinance goes too far.

The commission has comprehensive authority to police which local ordinances should apply to public utilities. The utility code empowers the commission uniquely to investigate any "complaint made against any public utility by any . . . municipal organization" alleging that any "practice or act whatsoever affecting or relating to the service of any public utility . . . is in any respect unreasonable, unsafe, insufficient or unjustly discriminatory". I.C. § 8-1-2-54. And if the commission finds a local regulation "unjust, unreasonable, unwholesome, unsanitary, unsafe, insufficient, preferential, unjustly discriminatory, or otherwise in violation of any of the provisions of this chapter", then the commission can replace the offending regulation with its own "just and reasonable" regulation. *Id.* § 8-1-2-69.

The code grants the commission such power over disputed ordinances "affecting or relating to the service of any public utility", *id.* § 8-1-2-54, and dictates that "service" be read "in its broadest and most inclusive sense", *id.* § 8-1-2-1(e). "[S]ervice" means not only the utility's product—be it gas, electric, or telephone service—"but also . . . the plant, equipment, apparatus, appliances, property, and facility employed by any public or other utility" used "in performing any service or in furnishing any product". *Ibid.* Such sweeping language embraces nearly all public-utility conduct. Thus, even a municipal ordinance touching utility service only tangentially falls within the commission's orbit.

Relevant here, Duke's "service" includes not just the electricity it produces, but also the property it uses to provide electricity. *Ibid.* Given the utility code's broad mandate, we hold that Noblesville's ordinance affects Duke's utility service. Duke's garage and office projects are necessary to maintaining its transmission lines, which in turn are critical to providing reliable utility service to customers. And Duke's demolition of the existing structures on its property is an essential precursor to the construction of its new substation, which directly relates to its provision of utility service.

Despite the utility code's capacious mandate to the commission, Noblesville persuaded the courts below that its ordinance does not

directly relate to Duke's public-utility service or facilities, leaving the trial court to decide whether to enforce the ordinance against Duke. *Duke Energy*, 200 N.E.3d at 940–41. But for the reasons stated, the code's plain language requires a different result—Noblesville's ordinance need not "directly" relate to Duke's public-utility service or facilities to trigger the commission's authority. Reading the code otherwise would ignore the legislature's policy judgment to sweep even generally applicable ordinances like Noblesville's into the commission's realm.

The upshot is that whether Noblesville's ordinance "affect[s] or relat[es] to" Duke's public-utility service is a legal question for courts, but only the commission can decide whether Noblesville's ordinance goes too far. The commission alone has the power and expertise to find a local ordinance unenforceable and then replace the ordinance with its own regulation—thus ensuring effective and reliable statewide utility service while also protecting local communities from unsafe practices by public utilities. I.C. §§ 8-1-2-54, 8-1-2-69; see *City of Gary v. Ind. Bell Tel. Co.*, 732 N.E.2d 149, 159 (Ind. 2000) (holding only the commission can decide a public utility's reasonableness challenge to a municipal ordinance imposing fees because the commission "is better qualified to make this type of reasonableness determination").

As our court of appeals recognizes, "[t]here are sound public policy reasons why the General Assembly has declared the [commission] to be the exclusive arbiter of enforceability of ordinances affecting utility services." *Town of Avon*, 82 N.E.3d at 325. The commission is the "fact-finding body with the technical expertise to administer the regulatory scheme devised by the legislature" and to ensure "that public utilities provide constant, reliable, and efficient service to the citizens of Indiana." *N. Ind. Pub. Serv. Co.*, 907 N.E.2d at 1015. And the commission has "the broader non-local focus necessary to balance [the] competing interests" of public utilities and municipalities in deciding whether local ordinances affect or relate to public-utility service unreasonably. *Town of Avon*, 82 N.E.3d at 325.

We hold that Duke's counterclaim is subject to the commission's exclusive reasonableness review under sections 8-1-2-54 and 8-1-2-69. Since only the commission has primary jurisdiction to decide whether Noblesville's ordinance improperly impedes Duke's utility functions, Duke's counterclaim belongs to the commission. Whether the commission finds the ordinance reasonable will dictate whether the trial court in turn grants Noblesville's request to enforce its ordinance against Duke. Thus, the trial court on remand must refrain from ruling on the enforcement claim until the commission decides whether Noblesville's ordinance is reasonable. See *Austin Lakes*, 648 N.E.2d at 645. The court also may opt to give the commission primary jurisdiction over the entire action, which consists of Noblesville's enforcement claim and Duke's counterclaim.

*       *       *

For these reasons, we hold that whether Noblesville's disputed ordinance affects or relates to Duke's public-utility service unreasonably is for the commission to decide. We reverse the trial court's judgment and remand for further proceedings consistent with our opinion.

Rush, C.J., and Massa, Goff, and Molter, JJ., concur.

ATTORNEYS FOR APPELLANT DUKE ENERGY INDIANA, LLC
Margaret L. Smith
Darren A. Craig
Frost Brown Todd LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE CITY OF NOBLESVILLE, INDIANA
Brian H. Babb
Jonathan W. Hughes
Philip R. Zimmerly
Bose McKinney & Evans LLP
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE INDIANA ENERGY
ASSOCIATION
Brian J. Paul
Jane Dall Wilson
Faegre Drinker Biddle & Reath LLP
Indianapolis, Indiana

ATTORNEYS FOR AMICI CURIAE ACCELERATE INDIANA
MUNICIPALITIES AND INDIANA MUNICIPAL LAWYERS
ASSOCIATION
Thomas Kennedy Downs
Karen Arland
Kennedy Downs & Arland PC
Carmel, Indiana

Becca McCuaig
Accelerate Indiana Municipalities
Indianapolis, Indiana